ELIZABETHPORT CORDAGE COMPANY, APPELLANT, VS. WILLIAM S. WHITLOCK, ROBERT M. SHOEMAKER, MICHAEL M. SHOEMAKER ET AL., APPELLEES.

SURROGATION, WHEN ALLOWED, OF JUNIOR MORTGAGEES TO PRIOR RIGHTS OF OLDER CANCELLED MORTGAGE THAT SECURED SAME INDEBTEDNESS—EJECTMENT JUDGMENT AS AN ADJUDICATION OF TITLE—LIS PENDENS—JUDGMENTS AIDED AND EXPLAINED BY ENTIRE RECORD.

1. Where a mortgage, prior in date and lien to all other claims against the property it covers, is purchased from the mortgagees for a good and valuable consideration, and the purchasers thereof, instead of taking an assignment or transfer thereof to themselves, procure it to be absolutely and unconditionally cancelled and satisfied of record by the mortgagees, and several years subsequent to the date of such cancelled mortgage, take a new mortgage to themselves on the same property to secure the same indebtedness that had been secured by the old cancelled mortgage: *Held*, That as against innocent third persons, without notice, who have in good faith been induced to change their positions, by purchasing the property for a valuable consideration, in reliance upon what the record speaks as to the cancellation of such older mortgage, such purchasers of the older cancelled mortgage have no right to be subrogated to the priorities thereof, or to have its cancellation of record vacated or ignored.

2. The law of ejectment in Florida in force up to and until the enactment on February 22d, 1881, of Chapter 3244, did not require the verdicts or judgments in such suits to state either the qual-

ity or quantity of the plaintiff's estate in the lands recovered, nor to give any description of the land recovered.

3. Under the provisions of section 2, p. 481 McClellan's Digest, the interposition of a plea of "not guilty" by the defendant in an ejectment suit was expressly declared to have the effect in such cases of putting in issue *the title* to the land in controversy. Where, prior to the enactment on February 22d, 1881, of said Chapter 3244, an action of ejectment was brought against a tenant in possession holding under a lease from a third person, the declaration in which suit alleging that the plaintiffs claimed title to the property as the owners thereof, and the lessor of the defendant tenant, after obtaining leave of the court so to do, interposed a plea in his own name, in which he alleged that he (such lessor) was the owner of the property, and that the defendant sued was but his tenant holding possession under him, and that he was "not guilty," and the issue was joined and the case tried upon such plea alone, the trial resulting in a verdict for the plaintiffs, but the judgment entered thereon failed to name such defending lessor, but adjudged the recovery of possession of the premises in favor of the plaintiffs, in express terms, only against the defendant tenant originally sued, without any mention of his defending lessor, and such defending lessor, in his own name, afterwards appealed from such judgment, as being against himself, to an appellate court where the same was affirmed: *Held*, That such judgment was an adjudication of *the title to* the property involved, as between the plaintiffs and such *defending lessor;* and that such defending lessor, and all persons acquiring any interest in the property through him *pending such ejectment suit*, are estopped by such judgment from setting up any title or right of possession to such property that was held by such defending lessor *at the time of the trial* of such ejectment suit, whether the titles that he then held were urged or produced at such trial or not.

4. Every judgment may be construed and aided by the entire record in the case.

5. A purchaser *pendente lite* is bound by the judgment or decree rendered against the party from whom he makes the purchase, as much so as though he had been a party to such judgment or decree himself.

Appeal from the Circuit Court for Duval county.

The facts in the case are stated in the opinion of the court. .

*A. W. Cockrell & Son*, for Appellant.

*Bisbee & Rinehart*, for Appellees.

TAYLOR, J.:

The appellant, a corporation, as complainant below, filed its bill in equity in the Circuit Court of Duval county on the 24th day of July, A. D. 1890, against William S. Whitlock, Robert M. Shoemaker, Michael M. Shoemaker, Mary S. Putnam, John R. Putnam, Francis M. Shoemaker, Murray M. Shoemaker, Henrietta Shoemaker and Jerre S. Smith, Jr., for foreclosure of mortgage, alleging that on the 27th day of September, A. D. 1875, the defendant William S. Whitlock was indebted to Lawrence Waterbury and William Marshall, of the city of Brooklyn, State of New York, in the sum of twenty thousand dollars, and on said date, to secure the same, executed to said Waterbury and Marshall his bond in the penal sum of $40,-000. conditioned to pay said indebtedness of $20,000 and interest thereon from date at the rate of seven *per cent. per annum*, and a mortgage on water lots 5 and 6, fronting on Bay street, in the city of Jacksonville, Florida, excepting from said lot 6 a parcel in the northwest corner thereof, having a frontage on Bay street of 40 feet, and a depth towards the St. Johns river of 45 feet, owned by one Joseph Santo; which mortgage was duly acknowledged and recorded in the public records of Duval county on the 8th day of October, A. D. 1875,

## JANUARY TERM, 1896. 193

Elizabethport Cord. Co. v. Whitlock, Shoemaker et al.—Opinion.

the original bond and mortgage being attached to the bill as exhibits. That on the 20th day of March, A. D. 1877, the said bond and mortgage, with all interest, costs, expenses and penalties thereunder were wholly outstanding, unpaid and unsettled; that on that date, in the city of New York, for a good and valuable consideration moving from Daniel B. Whitlock, E. M. Fulton and A. W. Lukens, as copartners under the firm name and style of the Elizabethport Steam Cordage Company, hereafter called the copartnership, the said Waterbury and Marshall sold, as signed, transferred and set over unto said copartnership their said indebtedness of William S. Whitlock as evidenced aforesaid, and then and there delivered to said copartnership their said bond and mortgage; and then and there, in further execution thereof, the said Waterbury and Marshall delivered to said copartnership a certain paper purporting to be a release or satisfaction of their said bond and mortgage; and then and there the said William S. Whitlock, being indebted to said copartnership in the sum of twenty thousand dollars and more, executed to said Daniel B. Whitlock, acting for his said copartnership, a certain bond in the penal sum of $40,000, conditioned upon the payment of said sum of $20,000 on or before the expiration of one year from the date thereof, with interest thereon from said date at the rate of seven *per cent. per annum*, payable semi-annually; and then and there the said William S. Whitlock also executed to said Daniel B. Whitlock, acting for his copartnership as aforesaid, his certain mortgage deed of said described lots of land, conditioned upon the payment of the said indebtedness mentioned in said last named

bond, which mortgage was duly acknowledged and re-corded in the public records of Duval county on June 26th, 1877. The originals of said last mentioned bond and mortgages are attached to the bill as exhibits. That on the same day, to-wit: June 26th, 1877, the said paper purporting to be a release as hereinbefore stated was also recorded in said public records of Du-val county on the page of the record book next con-tiguous to the record of said mortgage to Daniel B. Whitlock. That said bonds and the said mortgages were exact duplicates of one another, excepting in the dates and the name of the mortgagee, as aforesaid. That said bonds and mortgages were parts of one and the same transaction. That the said William S. Whit-lock was seized and possessed and in the actual pos-session of said described lands on and during each and every the said days and periods aforesaid. That nei-ther the indebtedness evidenced by the said mortgage to Waterbury and Marshall, nor any interest, costs or expenses thereon, nor the indebtedness evidenced by said bond and mortgage to said Daniel B. Whitlock, nor any interest, costs or expenses thereon have ever been paid, satisfied or discharged. That orator, the said corporation, is the *bona fide* purchaser for value of the said indebtedness, bonds and mortgages, and all and singular the rights and equities in the premises of the said Lawrence Waterbury and William Mar-shall, and of the said Daniel B. Whitlock and the said copartnership, the Elizabethport Steam Cordage Com-pany. That all of the other defendants, except Wil-liam S. Whitlock, are now claiming the right of pos-session or ownership, or other rights and equities in said described lands; but that the fact is, that the rights and equities, claims and demands, if any, of

said defendants are subsequent and inferior to the rights and equities of your orator as herein set forth. The bill prays that the complainant be adjudged to be entitled to each and every the rights and equities therein set forth. That your orator be adjudged to be the assignee of the said indebtedness, bond and mortgage of the said Waterbury and Marshall. That it have a decree for the sum due it by William S. Whitlock, together with costs, charges and solicitor's fees. That it be adjudged to have a mortgage lien on said described lands for the sums due, and that said lien be decreed to be prior and superior in all respects to all and singular the rights and equities, claims and demands, of whatsoever nature, of the defendants, and each and every of them herein. That said lands be sold by a master to be appointed, under the decree of the court, and the proceeds applied to the payment of the sums found to be due complainant; and that if such proceeds be insufficient to pay said sums in full, that it have a personal decree for the deficit against the said William S. Whitlock. There is also a prayer for general relief and for subpœna.

All of the defendants appeared in person or by attorney. The defendant, William S. Whitlock, interposed no defense, and decree pro confesso was entered against him. All of the other defendants jointly answered the bill as follows: They admit the execution of the bond and mortgage by William S. Whitlock to Waterbury and Marshall, but disclaim any knowledge as to whether said William was, on the date thereof, indebted to said Waterbury and Marshall, and demand strict proof thereof. They admit the execution of the bond and mortgage by William S. Whitlock to Daniel B. Whitlock as alleged,

but disclaim any knowledge as to whether William S. Whitlock was indebted, at the time of their execution, to the Elizabethport Cordage Company in any sum, and as to whether the said Waterbury and Marshall assigned to said Cordage Company the said indebtedness evidenced by the bond and mortgage of William S. Whitlock to them, and as to whether said Cordage Company paid to the said Waterbury and Marshall any consideration whatever for the said indebtedness, and demand strict proof thereof. They deny that the paper purporting to be a release of the said mortgage to Waterbury and Marshall was recorded in said public records of Duval county on the page of the record book of mortgages "F," next following the record of said mortgage to Daniel B. Whitlock. They admit that William S. Whitlock was seized and possessed and in the actual possession of the lands described on the dates mentioned. They disclaim any knowledge as to whether any interests, costs or expenses upon the said indebtedness evidenced by the said bonds and mortgages to Waterbury and Marshall and to Daniel B. Whitlock have not been paid, satisfied or discharged as alleged, and demand strict proof thereof. They disclaim any knowledge as to whether the complainant is the bona fide purchaser for value of the said indebtedness, bonds and mortgages and all the rights and equities in the premises of the said Waterbury and Marshall and the said Daniel B. Whitlock and of the said Cordage Company as alleged, and demand strict proof thereof. They allege that on the 5th day of September, A. D. 1876, the defendant William S. Whitlock was in possession of the premises mentioned in the bill of complaint by certain persons, his tenants, and

on said date one John Buckell, together with other persons, began their suit of ejectment in the Circuit Court of Duval county, Florida, against Peter Jones and George L. DeCottes to recover a portion of the said property described in the bill of complaint, to-wit: a part or portion of water lot five, situate, lying and being in the city of Jacksonville, in the county of Duval, State of Florida; said part or portion of said lot being the same on which there is a steam mill and wharf used and occupied by the defendants; also water lot number six, situate, lying and being in said city, county and State, excepting so much of said lot in the northwestern corner thereof having a frontage on Bay street of said city of 40 feet, and running towards the St. Johns river 45 feet, and being the property of Joseph Santo. And on the same day the said plaintiffs filed their declaration in the said suit claiming title to the said land as before particularly described. And afterwrrds the said William S. Whitlock filed his petition in the said court praying to be made a party defendant to said suit, and by order of the said court he was thereupon made a party defendant; and afterwards, on the 6th day of November, 1876, the said William S. Whitlock, by Anno & Marcy, his attorneys, filed his plea to the said declaration saying that he was the owner of the premises in question, and that the defendants named in the declaration were his tenants by lease, and that he was not guilty. And afterwards, on the first day of June, 1877, the said Whitlock filed his bond, according to the statute in such cases made and provided, and his petition praying that the said suit might be removed to the Circuit Court of the United States for the Northern District of Florida, upon the ground that

the suit arose under the act of Congress of August 6th, 1861. And thereupon on the second day of June, 1877, the prayer of the said petition was granted, and the said suit was so removed. And afterwards, to-wit : on the thirteenth day of May, 1878, the said suit came on to be tried in the said United States Circuit Court before a jury, and the plaintiffs rested their case upon their title as the heirs of one Willey, and the defendant Whitlock rested on his defense upon a purchase under certain confiscation proceedings had against the said Willey in his life-time, whereby the said Whitlock claimed title in fee simple to the said premises adverse to the title in fee simple set up by the said plaintiffs. And the issue of the said title being submitted to the jury, was found in favor of the plaintiffs, whereupon on the same day judgment was entered in favor of the plaintiffs against the said Whitlock, and under the said judgment the said plaintiffs were led into possession of the said premises by the United States Marshal. And the said judgment remains in full force and unreversed. That on the 5th day of September, 1876, the said John Buckell and others began their suit of ejectment in the Circuit Court of Duval county, Florida, against Helen Broward to recover another portion of the said property described in the said bill of complaint, to-wit : a part of water lot 5 in the city of Jacksonville, on which is situated a dwelling house ; and on the same day the said plaintiffs filed their declaration in the said suit claiming title to the said land as above described. And afterwards the said William S. Whitlock filed his petition in the said court praying to be made a party defendant to the said suit, and by order of the said court he was thereupon made a

party defendant, and afterwards, on the 6th day of
November, 1876, the said William S. Whitlock, by
Anno & Marcy, his attorneys, filed his plea to the
said declaration saying that he was the owner of the
premises in question, and that the defendant named
in the declaration was his tenant by lease, and that
he was not guilty.    That afterwards, on the first day
of June, 1877,·the said Whitlock filed his bond, ac-
cording to the statute in such cases provided, and his
petition praying that the said suit might be removed
to the Circuit Court of the United States for the
Northern District of Florida, upon the ground that
the said suit arose under the act of Congress of
August 6, 1861.    And that thereupon, on the second
day of June the prayer of said petition was granted,
and the said suit was so removed.    That afterwards, o n
the fifteenth day of May, 1878, a consent judgment
was entered for the plaintiffs in the said suit for the
reason that the issue was ·identical with the issue
which had already been determined in the said prior
suit hereinbefore mentioned ; and upon the said judg-
ment the said plaintiffs were led into possession of
the said premises by the United States Marshal.    That
said judgment remains in full force and unreversed.
That in each of said suits the fee simple title was
litigated ; and, taken together, the premises recov-
ered by the said Buckell and others in the said two
suits comprise all the premises conveyed by the said
William S. Whitlock by the said mortgage deed.
That they, the defendants, purchased the said prop-
erty from the said Buckell and others in the year
1884, paying therefore a valuable consideration, and
that they purchased the same in good faith, having
no notice that the mortgage to Daniel B. Whitlock

was a renewal of the mortgage given to Waterbury and Marshall, and was consequent upon an assignment of the said indebtedness from Waterbury and Marshall to Daniel B. Whitlock ; and that, as to these defendants, the said Daniel B. Whitlock was a purchaser *pedente lite*, and he and his · assigns are now concluded by their judgments in the said suits of Buckell and others against William S. Whitlock. That while they admit that at the time of the execution of the said bonds and mortgages the said William S. Whitlock was seized and possessed of the said premises, yet they deny that he, at the time, or at any other time had, or ever had, any title to the said premises ; but they aver the fact to be that the said William S. Whitlock was in possession of the said premises without any right or title whatever, and that the grantors, these defendants and their ancestor at the time of the disseizin by the said William S. Whitlock, were the true owners in fee simple of the title to the said premises, and that the said William S. Whitlock was their disseizor holding title adversely to the grantors of these defendants and their ancestor, and that he had no right whatever as against these defendants and their grantors and their ancestor to execute the said bonds and mortgages mentioned in the bill, and thereby to encumber the said premises. That these defendants, and their grantors, the said Buckell and others, have been in open, continuous and notorious possession of the said premises ascribed in the bill under claim of title adverse to the said William S. Whitlock, and to all the world, from the 18th day of May, 1878, down to the filing of the complainant's bill.

Replication to this answer was filed, and the cause referred to a master to take and report the testimony.

The complainant introduced the two bonds and mortgages executed by William S. Whitlock to Waterbury and Marshall, and to Daniel B. Whitlock, the first dated September 27th, 1875, and payable September 27th, 1876 ; the second dated March 29th, 1877, and payable March 29th, 1878. By the oral testimony of one E. M. Fulton, taken on commission, it was proved for the complainant that William S. Whitlock was on the 27th of September, 1875, indebted to the firm of Waterbury and Marshall in the sum of upwards of $20,000, and to secure it gave them the bonded mortgage dated September 27th, 1875. That in 1875 the Elizabethport Steam Cordage Company was a firm composed of Daniel B. Whitlock, the witness (E. M. Fulton) and others, and so continued until the year 1888, when Daniel B. Whitlock died, and that in 1889 the remaining members of the firm organized and became incorporated, the members of the firm upon the valuation of all their interests in the firm selling the same to the corporation, and thereafter the complainant corporation became possessed of all the rights and interests of the firm. That said firm exchanged some valuable claims it held in Alabama, that afterwards yielded $19,000 and more, together with some cash, with Waterbury and Marshall for the bond and mortgage and the indebtedness secured thereby that they held against William S. Whitlock, upon which said bond and mortgage was actually handed over to them, and that thereupon William S. Whitlock executed the new bond and mortgage in the same terms as the original to Daniel B. Whitlock on behalf of said firm, the

Elizabethport Cordage Company. That William S. Whitlock then owed said firm about $40,000. That the only pay Waterbury and Marshall ever received on their debt secured by this mortgage was through the witnesses' firm as above stated, and that his firm never was paid this $20,000 so secured, nor any part of it, nor any interest, cost or expenses. That neither he (the witness) nor any member of his firm, the Elizabethport Steam Cordage Company, had any notice or knowledge of any suit in Florida in reference to the lands in controversy until a year and more after the execution of the new mortgage, and just about the time that the trial was over.

The complainant also introduced deeds in evidence, tracing title to the premises in question to William S. Whitlock their mortgagor, as follows: 1st. Quit-claim deed from John L. Requa and wife to William S. Whitlock, dated April 18, 1871, recorded in Duval county, Florida, May 29th, 1871. 2nd. Qait-claim deed from John S. Sammis and wife to John L. Requa and Martin R. Cook, dated May 15th, 1869, and recorded June 10th, 1869. 3rd. Quit-claim deed from Martin R. Cook and wife to John L. Requa, dated September 11th, 1869, and recorded December 18th, 1869. 4th. Deed from Samuel N. Williams, as sheriff of Duval county, Florida, to John S. Sammis, dated March 1st, 1869, and recorded March 18th, 1869. This deed recites that the premises in question had been levied upon and sold on March 1st, 1869, by the said sheriff as the property of Charles Willey under a judgment and execution issued out of the Circuit Court for Duval county, Florida, in favor of Alexander Caldwell, against said Charles Willey. The complainant also introduced in

evidence the judgment for $1,597.95 dated December 9th, 1868, and the execution dated December 28th, 1868, under which the said sheriff sold the property, and under which he executed the foregoing deed. The complainant also proved that John S. Sammis was in actual possession of the property, residing upon it, for several pears prior to his sale of it to John L. Requa and Martin R. Cook, when he delivered possession thereof to the two last named grantees, and that Requa retained possession until he sold to William S. Whitlock, after which William S. Whitlock had possession and continued in possession for about eleven years, leasing the property and collecting rents therefrom, until about the year 1882, when he was put out of possession by the authorities, and the property was then turned over to the heirs of Willey.

At the close of the complainant's evidence the parties, by their respective counsel, entered in writing into the following stipulation and agreed state of facts, to-wit:   1st. That the records of the United States Circuit and District Courts for the Northern District of Florida were totally destroyed by fire on the 18th day of May, 1891.   2d. That John Buckell died prior to March 1st, 1884, and that in his life-time his only claim to the property in question was in right to his wife Mary E. Buckell.   3d. That Robert M. Shoemaker, since March 1st, 1884, died intestate as to property in Florida, and that the defendants are his heirs.   4th. That a certified copy of the record of a power of attorney from Francis E. Yale to C. P. Cooper may be given in evidence without further proof.   5th. That Francis E. Yale and Mary E. Buckell were the sole surviving children and heirs at law of Charles Willey,

who died on the 15th day of February, 1875, intestate, while residing in Duval county, Florida; and that at and before the death of Charles Willey the fee simple title to the parcels of land described in the bill of complaint was vested either in Charles Willey or in William S. Whitlock, the latter being then in adverse possession. 6th. That the so-called mortgage to Daniel B. Whitlock, and the so-called release of the mortgage to Waterbury and Marshall appear recorded in juxtaposition on the public records of Duval county, that is, the so-called mortgage to Whitlock beginning on the same page next to the ending of the so-called release. 7th. That William S. Whitlock was in possession of the premises from the time of the judgments until the writs of possession thereunder were executed in 1882, and that from that time the defendants and their grantors have been in actual, open, notorious and continuous possession of the premises adverse to all the world.

It was further agreed upon and stipulated as part of the facts of the case: That $20,000 was paid by William S. Whitlock for the property, and that it was the full value for the indefeasible fee simple to the property set forth in the bill; and that Robert M. Shoemaker paid $25,000 for the property, which was at the time full value for the indefeasible fee simple title thereto. That before investing in the property Robert M. Shoemaker, through his agent and son-in-law John G. Christopher, applied to the law firm of Fleming & Daniel to pass on the title to the property, but upon failure to agree with them upon their fees for such service, he employed D. U. Fletcher, an attorney of Jacksonville, for that purpose, and that Mr. Fletcher made an abstract of the title from the records of Du-

val county and gave his opinion on the same to the effect that Buckell and Yale had good title to the property; and that neither said Shoemaker, nor any one on his behalf, made any other or further inquiry or investigation in the matter; and that neither said Shoemaker, nor his agent Christopher, nor any agent of theirs, had any knowledge in the premises, other than the knowledge obtained from the record and what the law presumes.    It was also agreed that a certified copy of the release mentioned in the bill of complaint might be filed in evidence.

The defendants, other than William S. Whitlock, introduced record evidence to prove title in themselves as follows:    1st.  A warranty deed in fee, for the expressed consideration of $25,000, from Francis E. Yale and Mary E. Buckell to Robert M. Shoemaker, dated March 1st, 1884, and recorded March 13th, 1884, in Duval county.    The said Robert M. Shoemaker having died intestate as to this property, the defendants, except William S. Whitlock, inherit his rights and estate therein as his sole heirs at law.

It having been admitted that the original records of the Circuit and District Courts of the United States for the Fifth Judicial Circuit, Northern District of Florida, were totally destroyed by fire on the 18th day of May, 1891, prior to the taking of testimony in the case, the defendants introduced in evidence a certified copy of the transcript of the record upon writ of error to the Supreme Court of the United States, from the Circuit Court of the United States for the Northern District of Florida, in the case of Peter Jones, George L. DeCottes and William S. Whitlock, plaintiffs in error, against John Buckell and Mary E. Buckell, defendants in error, which writ of error was tested on the 15th day of

April, A. D. 1879.   From which transcript of the re-
cord, duly certified by the Clerk of the Circuit Court
of the United States for the Northern District of Flor-
ida, from which such writ of error was taken, the fol-
lowing facts appear:   That on the 5th day of Septem-
ber, A. D. 1876, John Buckell and Mary E. Buckell
instituted their action of ejectment against Peter Jones
and George L. DeCottes, in the Circuit Court of the
State of Florida, in and for Duval county, in which
the declaration was as follows:

"In the Circuit Court of Florida,
Fourth Circuit, Duval County.

John Buckell and Mary E. Buckell, by their attor-
ney, complain of Peter Jones and George L. DeCottes,
who have been summoned to answer them in an action
of ejectment.   For that whereas the defendants are in
possession of a certain tract or parcel of land situate,
lying and being in said county, known and described
as follows, to-wit:   A part or portion of water lot num-
ber five, situate, lying and being in the city of Jack-
sonville, county of Duval and State of Florida, said
part or portion of said lot being the same on which
there is a steam mill and wharf, used and occupied by
said defendants; also water lot number six, situate,
lying and being in said city, county and State, ex-
cepting so much of said lot in the north-western corner
thereof having a frontage on Bay street (of said city)
of forty feet, and running towards the St. Johns river
forty-five feet, and being the property of Joseph Santo,
to which said plaintiffs claim title.   And the defend-
ants have received the profits of said land since the
15th day of February, A. D. 1875, of the yearly value
of two thousand dollars, and refuse to deliver the pos-

session of said lot to the plaintiffs, or to pay them the profits thereof."

On the 6th of November, 1876, the defendant mortgagor herein, William S. Whitlock, filed the following plea in said ejectment suit, to-wit:

"Fourth Judicial Circuit, Duval County, Florida. John Buckell and Mary E. Buckell vs. Peter Jones and George A. DeCottes.

And now, November sixth, A. D. 1876, comes into court, by summons of said court, William S. Whitlock, as defendant, by his attorney in fact, J. H. Norton, by Anno & Marcy, his attorneys at law, who says that he is the owner of the premises in question (and that the defendants named are but tenants by lease), that he is not guilty of the supposed trespass and ejectment above laid to his charge in any part thereof in manner and form, as the said John and Mary E. Buckell hath complained against him, and of this he the said William S. Whitlock, puts himself upon the country." This plea was verified in due form.

That afterwards, on June 1st, 1877, the said defendant, William S. Whitlock, filed in the said State court his petition and bond for the transfer and removal of said ejectment suit from the said State court to the Circuit Court of the United States for the Northern District of Florida, which petition alleged that said William S. Whitlock was a defendant in said ejectment suit, and prayed the removal thereof, upon the ground that said ejectment suit arose under a law of the United States, to-wit: "An act to confiscate property used for insurrectionary purposes," approved August 6th, 1861; and because the petitioner, William S. Whitlock, was a citizen of the State of New York, and the plaintiffs therein citizens of the State of Flor-

ida. That on the 2d day of June, 1877, an order was made by the Judge of the State Circuit Court upon said petition and bond, removing and transferring said ejectment suit to the Circuit Court of the United States for the Northern District of Florida. That at the trial of said ejectment suit in the United States Court on May 10th, 1878, the plaintiffs and defendants therein entered into the following stipulation and agreement in writing as to facts therein: "The plaintiffs and defendants, by their attorneys, admit the following to be true, without the necessity of introducing evidence in proof thereof, that is to say: The plaintiffs admit the regularity of all the proceedings in the confiscation suit in the District Court for the Northern District of Florida against the property of Charles Willey, and that there was a decree of condemnation and sale of said property. The defendants are not required to introduce certified copies of such proceedings or the original papers; and that John S. Sammis was the purchaser at confiscation sale. The defendants on their part admit that Francis E. Yale and Mary E. Buckell are the children and only heirs at law of Charles Willey, and that the lands in controversy are the same lands which the defendants were in possession of at the date of the service of summons in said suits in ejectment." That said ejectment suit was tried by a jury in the said United States Court, and on the 13th day of May, A. D. 1878, the jury therein returned the following verdict: "We, the jury, find the defendants guilty, and assess the plaintiffs damages as mesne profits at $932.50." Upon which verdict the following judgment was rendered:

"John Buckell and Mary E. Buckell vs. Peter Jones *et al.*—Judgment in Ejectment.

And now, on this 13th day of May, one thousand eight hundred and seventy-eight, comes the plaintiffs by their attorney, and it appearing to the court that the defendants had filed their pleas, and the issue being joined, whereupon came a jury to try the issue, to-wit: William H. Christy, John H. Anderson, William T. Rose, Enos Wasgate, T. S. Wilmuth, M. F. Swaim, Jerremiah Follansbee, R. N. Ellis, William H. Kendrick, John F. Tyler, A. D. Campbell, Geo. C. Wilson, who being duly sworn to try the issue joined, upon their oath do say: We, the jury, find for the plaintiffs John Buckell and Mary E. Buckell, and that the defendants Peter Jones and George L. DeCottes are guilty of the ejectment and trespass as alleged in the declaration. Now, therefore, it is considered and ordered by the court that the plaintiffs John Buckell and Mary E. Buckell do have and recover of and from the defendants Peter Jones and George L. DeCottes, according to the finding of the jury, the possession of the premises mentioned in the declaration filed in this action, with all the tenements thereunto belonging, and the sum of $932.50 for mesne profits, and the further sum of $42.87 for costs in this behalf expended. And it is further considered and ordered by the court that the writ of this court do issue directed to the Marshal of the United States for the Northern District of Florida, to cause the said John Buckell and Mary E. Buckell to have possession of the said premises according to the force, form and effect of their said recovery."

That from this judgment the defendant William S. Whitlock, in October, 1879, alone took a writ of error

to the Supreme Court of the United States, giving a bond to John Buckell, Mary E. Buckell and Francis Yale in the sum of $4,000, conditioned to pay the amount of the recovery for mesne profits, with all accrued mesne profits, in the event the said judgment was affirmed by the Supreme Court of the United States. Which bond recited that the recovery in ejectment was in favor of John Buckell, Mary E. Buckell and Francis Yale, and against Peter Jones *et al.* and William S. Whitlock; and upon this bond Daniel B. Whitlock was one of the sureties. The bill of exceptions settled and signed by the Judge of the United States Circuit Court upon said writ of error to the Supreme Court of the United States was as follows:

"Bill of exceptions filed by defendant for writ of error to U. S. Supreme Court.

5th Judicial Circuit, Northern District of Florida.
John Buckell and Mary Buckell vs. Peter Jones and George L. DeCottes, tenants, and William S. Whitlock, owner and claimant of premises.—Ejectment.

Cause removed from Circuit Court of Duval County, Florida, to U. S. Circuit Court,

Be it remembered that at a term of the Circuit Court of the United States held for the Northern District of Florida, in the Fifth Judicial Circuit, held at the city of Jacksonville on the tenth day of May (being a continuation of the December term for said Judicial Circuit), in the year of our Lord one thousand eight hundred and seventy-eight, a cause therein pending, wherein John Buckell and Mary E. Buckell were plaintiffs, and Peter Jones and George L. DeCottes (tenants) and William S. Whitlock, claimant, defendants, came on to be heard before his honor Thomas Settle,

sitting as Circuit Judge of said Circuit Court, at which day came the said parties by their respective attorneys, and thereupon the said issues in manner aforesaid joined between the said parties came on to be tried, and the jurors of the jury aforesaid, whereof mention is within made, being called, likewise came, and were sworn to try the said issues in manner aforesaid joined, and thereupon the plaintiffs and defendants offered their respective proofs and were heard by the said court in argument and by the said jury aforesaid. Whereupon the said judge, the said parties having concluded and submitted their testimony and the several matters aforesaid, did then and there give his opinion and deliver his charge to the jury (*inter alia*) that "the acts of 1861 and 1862, though differing in some respects, are *in pari materia;* while the one treats of property, the other of the person, both are on account of the acts of the offending. The Armstrong foundry case shows that you can not proceed against the offending thing without coupling with it the guilty knowledge and consent of the person, and that pardon of the offender absolved the property as well as the person. Upon review of the whole case, the court charges you that the condemnation and sale of the lot in question, purporting to convey a fee simple, only conveys an estate for the life of Charles Willey, and that the heirs of the said Charles Willey are entitled to recover the same." To which said opinion and said portion of the charge of the court the said defendant, by his attorney, did then and there except. And the said judge, under the charge and with the directions aforesaid, submitted the said issue and the evidence so given on the said trial to the jury, and the jury aforesaid then and there gave their verdict for the said plain-

tiffs, and found the defendants guilty, and assessed the damages at nine hundred and thirty-two 50–100 dollars ($932.50).

And the said defendants, by their attorney, then and there at the term of the court aforesaid did enter in writing and submit to the said court his motion that the said verdict be set aside and that a new trial be granted for reasons following, viz: "1st. For the reason that the——to the——was erroneous and against the law, in this, 'that the fee simple purported to be conveyed by deed of U. S. Marshal to John S. Sammis only conveyed a life estate,' and that the court exceeded its jurisdiction. 2d. General errors." And the said motion coming on to be heard on the 15th day of May, aforesaid, at the term aforesaid, the said court did consider and decide that the said motion should not be granted, to which decision the said defendants, by their attorney, did then and there except. Whereupon the court aforesaid, on the said 15th of May aforesaid, at term aforesaid, did render judgment in favor of plaintiffs, and found defendants guilty and assessed the damages at 932.50 dollars and costs of suit, as appears of record.

And inasmuch as the said several matters objected to or insisted upon and considered by the court do not appear by the record of the verdict and judgment aforesaid, the said defendants, by their counsel aforesaid, did then and there, at the term aforesaid, propose this their bill of exceptions to the said opinion, charge, and decisions of the said judge, and request him to sign the same according to the rules and statutes and acts of Congress in such case made and provided, which is done this 27th day of May, A. D. 1878,

under my hand and seal.

(SEAL) THOMAS SETTLE, Judge."

The defendants also introduced in evidence certified copies from the Circuit Court of the Fourth Judicial Circuit of the State of Florida, for Duval county, of the proceedings in another section of ejectment instituted, on the same date in said court as the foregoing, by the same plaintiffs against one Helen Broward for the recovery of "a part of water lot five, situate, lying and being in the city of Jacksonville, county of Duval and State of Florida, said part or portion of said water lot five being the same on which is a dwelling-house occupied by the defendant," in which the declaration was in the same form as in the other case, and in which the defendant William S. Whitlock, by leave of the court, interposed the same plea, alleging ownership in him, and that he was not guilty; and that the said William S. Whitlock filed therein his petition and bond for removal thereof to the United States Circuit Court upon the same grounds as in the other case; and that the cause was removed to said United States Court on the same date as was the other cause. The defendants then proved by the oral examination of John Wurts that he (the witness) is one of the solicitors of record in this cause for the defendants. That prior to the destruction of the records of the United States Court for the Northern District of Florida in 1891, he had several times carefully examined the record of the case of John Buckell and Mary E. Buckell vs. Peter Jones, George L. DeCottes and William S. Whitlock, in ejectment, in the Circuit Court for the Northern District of Florida. That according to his recollection, which was very clear on the subject, the transcript of the record from the United States Supreme

Court, which had been filed in evidence, marked exhibit A, is a correct copy of the record and of the proceedings in the lower court as they appeared to him from the files and minutes. That he several times also before the destruction of said records by fire examined the records of said United States Circuit Court in the case of Mary E. Buckell and other against William S. Whitlock and Helen Broward, and that there was a certified transcript of record in the latter case from the Circuit Court of Duval county that was identical with the transcript that has been filed in evidence marked exhibit B. That he also found upon the minutes of the court that a jury was empaneled in this case, and that a consent verdict was rendered, and, following the minute entry of the verdict was a judgment awarding the possession of the property described in the declaration to the plaintiffs. That he also found in the files a writ if possession that was issued at the same time as the writ of possession that he found on file in the case of Buckell vs. Jones, and that endorsed upon each of these writs was a return of the Marshal that he had executed the same. That the returns of the Marshal showed that the writs were executed during the year A. D. 1882. My recollection is that there was a marginal entry on the record in this case in this shape:

"John Buckell and Mary E. Buckell vs. Helen Broward and———Whitlock."

Then followed the copy of an agreement of counsel for a verdict with a sum stated for mesne profits; then came a statement of the empaneling of a jury and the verdict, and then the judgment, which, I am inclined to think, did not contain Whitlock's name. I think the judgment was worded substantially the same as the judgment against Jones *et al.*

The defendants then introduced George A. DeCottes as a witness, who testified that he was one of the defendants in the suit of John Buckell and Mary E. Buckell vs. Jones, DeCottes and Whitlock. That he was acquainted with water lot No. 5 in the city of Jacksonville in September, 1876. That at that time there was a dwelling on the north-east corner of the lot, which dwelling was fenced, and was occupied by Miss Broward for a number of years, but that he did not recollect whether she occupied it at that time or not. The remainder of the lot outside of the dwelling-house and enclosure was occupied by him. That he conducted a wood and grist mill on the rest of the lot outside of the dwelling-house and its enclosure. On cross-examination the witness stated that the lot extended from the south side of Bay street about 210 feet to the head of the dock. That he had it leased, and actually occupied it, conducting his business on it, and slept on the premises. That all of the lot was enclosed. The defendants also introduced in evidence a certified copy from the records of the cancellation and release of the mortgage from William S. Whitlock to Waterbury and Marshall, as follows:

"Lawrence Waterbury and William Marshall to William S. Whitlock.—Satisfaction of mortgage.

State of New York City and County of New York—ss.

We, Lawrence Waterbury and William Marshall, composing the firm of Lawrence, Waterbury & Co., of the city of New York, the mortgagees hereinafter mentioned, do hereby certify that a certain mortgage bearing date the twenty-second day of September, in the year one thousand eight hundred and seventy-five, made and executed by William S. Whitlock, of the city of New York, to us to secure the payment of

twenty thousand dollars with interest, which mortgage was filed for record and recorded October 8th, 1875, at 10 o'clock P. M., in Mortgage book D, pages 601, 602, 603 and 604 of the public records of Duval county, in the State of Florida, is paid; and we hereby consent that the same be cancelled of record; and we hereby release and discharge the said William S. Whitlock and the premises described in said mortgage from every lien, claim and demand under and by virtue of said mortgage.

In witness whereof we have hereunto set our hands and seals at the city and county and in the State of New York, the 22d day of March, in the year one thousand eight hundred and seventy-seven.

LAWRENCE WATERBURY, (SEAL).

WM. MARSHALL,     (SEAL).

Sealed and delivered in presence of—

EDWIN F. COREY, JR.,

WM. H. BERNERS."

Which cancellation of mortgage was duly proved for record on the same date of its execution, and was recorded in the public records of Duval county, Florida, on the 26th day of June, A. D. 1877.

Upon the pleadings and the above stated evidence the cause was finally heard and argued on February 17th, 1892, on which date it resulted in a final decree dismissing the complainant's bill. From this decree the complainants below have appealed.

All of the questions presented are included in the comprehensive assignment of error to the effect that the decree is contrary to law and equity, is contrary to the evidence, and is not supported thereby.

The propriety of the decree appealed from, in so far as the defendants, other than William S. Whitlock,

are concerned, must turn upon the proper solution of
the following questions: · 1. Under the circumstances
proved, is the complainant equitably entitled to be
substituted to the priorities of the mortgage to Water-
bury and Marshall; and, for that purpose, is it proper
to vacate and ignore the recorded satisfaction and can-
cellation of that mortgage?   2. If the complainant can
not equitably be substituted to the priorities of the
Waterbury and Marshall mortgage, is it estopped and
precluded by the judgments in the two ejectment suits
in favor of the Buckells against Jones, DeCottes,
Broward and William S. Whitlock, from now enforc-
ing the mortgage to Daniel B. Whitlock, of which it
claims the ownership, that was executed by the de-
fendant William S. Whitlock in said ejectment suits
during the pendency thereof?

The first of these propositions must be answered ·in
the negative.   The proof is that the ancestor (Robert
M. Shoemaker) of these defendants purchased the
property in question for a large and valuable consider-
ation in good faith and in full reliance upon the in-
formation exhibited to him by the public records as to
the status of the title thereto, and that he had no sem-
blance of notice or knowledge of the facts now dis-
closed by the bill for the first time, to the effect that
the last mortgage executed pending the ejectment suits
was nothing more than a renewal of the older security
for the same unpaid debt.   The first mortgage, exe-
cuted and recorded long prior to the institution of the
ejectment suits was made to entirely different parties
from the last one, and there is nothing upon the face
of the record as it appeared to the defendants when
purchasing that even tended to suggest that the two
instruments had any sort of connection or relevancy to

each other whatever. The instrument by which it was cancelled and satisfied by record was absolute and without condition or reservation, and published to the world in unequivocal terms that it had been fully paid and satisfied. Such certificate of its payment was executed some months after the amount secured thereby had become due and payable, and some seven days prior to the execution of the new or second mortgage. Had the complainant moved in time to rectify *its mistake* in having the older mortgage cancelled and satisfied of record, instead of having it assigned to it, as a living prior lien; and had it, in some proper manner, made known its equities therein, as now disclosed by its bill, before the rights of innocent third parties had intervened or attached, as in the cases of Matzen vs. Shaeffer, 65 Cal. 81, 3 Pac. Rep. 92; Young vs. Morgan, 89 Ill. 199; Morgan vs. Hammett, 23 Wis. 30, and Christie vs. Hale, 46 Ill. 117; cited by appellant's counsel, it would have been eminently proper to have granted the relief prayed in this respect, and to have subrogated it to all the prior rights and equities of the first or older mortgage, with a vacation of the recorded satisfaction thereof. But where, as in this case, it has kept the facts, constituting its equities in the older cancelled instrument, locked up exclusively within its own knowledge, permitting the absolute cancellation to remain of record proclaiming to the world that such mortgage had been fully paid, until innocent third parties in good faith invest their money in the property, relying upon the truth of what the record speaks, it would be unjust and inequitable then to give to such record a different and opposite effect from what it proclaims, by adjudging the cancellation there published to be of no force or effect. It was the complainant's

own mistake in having the older mortgage cancelled and satisfied of record, instead of being assigned to it; now since that mistake has been the means of inducing innocent third persons to *change their position* by investing in the property upon the faith of the truth of what the complainant itself caused the public records to represent, it is too late for it to ask a rectification of such mistake, and the damaging consequences must fall upon it instead of upon the heads of innocent third persons to whom no fault is attributable. St. Albans Trust Co. vs. Farrar, 53 Vt. 542; Washington County vs. Slaughter, 54 Iowa, 265, 6 N. W. Rep. 291; Banta vs. Garmo, 1 Sandf. Chy. 383; Mead vs. York, 6 N. Y. (2 Selden) 449, S. C. 57 Am. Dec. 467; 1 Jones on Mortgages (4th ed.), sec. 927*a* and citations; United States vs. Crookshank, 1 Edwards Chy. 233; Stearns vs. Godfrey, 16 Maine, 158; Purser vs. Anderson, 4 Edwards Chy. 18; Bowman vs. Manter, 33 N. H. 530, S. C. 66 Am. Dec. 743; Geib vs. Reynolds, 35 Minn. 331, 28 N. W. Rep. 923.

In answer to the second proposition involved, the appellant contends that it is not estopped or precluded by the judgments in the two ejectment suits in favor of the Buckells from enforcing its mortgage executed pending those suits, for the following reasons: 1. Because the description of the property involved in those suits was vague and indefinite, and does not describe the same land involved in this suit. 2. Because the verdicts and judgments in said suits do not describe any land whatever, and do not adjudicate the quality of the estate they find for the plaintiffs therein. 3. Because said judgments were not rendered expressly against William S. Whitlock, but only against the co-defendants, his tenants in possession. 4. Because the

said judgment settled simply the right of possession, and did not involve or adjudicate the title to the property. These contentions are untenable. At the time of the trial of said ejectment suits (May 13th, 1878) the law did not require the verdicts or judgments in such suits to state either the quality or quantity of the plaintiff's estate in the lands recovered, or to give any description of the land. It was not until afterwards, on February 22d, 1881, when Chapter 3244 of our laws was approved, that they were required to contain these essentials. The declaration in that one of these suits against Jones, DeCottes and Whitlock, accurately described one of the lots (No. 6) in controversy by its proper numbers, excepting therefrom a definitely described plat owned by another party, and also described by its proper numbers: "That part or portion of water lot number five in the city of Jacksonville, county of Duval and State of Florida, on which there is a steam mill and wharf used and occupied by said defendants." The declaration in the other of said suits against Helen Broward and William S. Whitlock described by its proper numbers: "That part or portion of water lot number five, situated, lying and being in the city of Jacksonville, Duval county, State of Florida, on which is a dwelling-house occupied by the defendant." These descriptions were sufficiently accurate and definite to show clearly and unmistakably what particular portion of said lot five was claimed and sought to be recovered in each of said respective suits. In the one, "the portion, and all of the portion, occupied by the defendants named, and on which a steam mill and wharf was located," and in the other, "the portion, and all of the portion, of the same lot occupied by the other named defendant, and on which

was located a dwelling-house.". It was shown by one of the defendants in one of these ejectment suits, who occupied the premises at the time, that the two portions of said lot five involved in, and thus definitely and unmistakably described in the pleadings in said two ejectment suits, when taken together, comprised the whole of said water lot five involved herein. Both suits having resulted in judgments in favor of the plaintiffs at the same time, it was tantamount to one adjudication to them of the entire lot. That the *title*, and not simply the right of possession, was involved in and adjudicated by the judgments in said ejectment suits, is apparent plainly upon the face of the pleadings, and followed, as a legal sequence, the judgment in such cases. The declarations in both cases follow the form prescribed by law in such cases; and, after describing the property, asserts a claim of title thereto in the plaintiffs. The defendant William S. Whitlock, who alone defended, in his plea in both suits asserts that he is the owner of the premises in question, and that the other defendants named are but his tenants by lease, and that he is not guilty of the supposed trespass and ejectment laid to his charge. Thus eliminating from the case by his plea any mere question of temporary right of possession, and explicitly planting the only defense interposed upon *his title as owner*. By section 2, of Chapter 999 laws, approved December 20th, 1859 (sec. 2, p. 481 McClellan's Digest), in force at the time of the rendition of the judgments in these two suits, the plea of "not guilty" put in by the defendant was expressly declared to have the effect in such cases of putting in issue the *title* of the land in controversy. In the well-considered case of Marshall vs. Shafter, 32 Cal. 176, the court says: "If the plair-

tiff, in his complaint in ejectment, avers title in himself, and the defendant interposes a general denial, the respective titles of the plaintiff and the defendant are put in issue. If the respective titles of the parties, or their right to the possession of the demanded premises, are put in issue and tried, and the plaintiff recovers judgment for possession, the judgment is an estoppel, and the defendant to avoid the estoppel, in a subsequent action, to recover the same premises, must show some other right of possession than he had when the judgment was rendered." In the same case it is further said that "the fact that a judgment in ejectment is not that plaintiff recover the title, but only that he recover the possession, does not prevent the judgment from being an estoppel as to whatever rights the parties respectively possessed." To the same effect is Doyle vs. Hallam, 21 Minn. 515; Sherman vs. Dilley, 3 Nev. 21. In Hennig vs. Redden, 46 Kansas, 231, 26 Pac. Rep. 701, it is said that "a judgment or decree of a court of competent jurisdiction is not only final as to the subject-matter, but also as to every other matter which the parties might have litigated in the case, and which they might have had decided." These cases state the law correctly, as it existed at the time of the rendition of these judgments. The judgments in the two ejectment suits do not, it is true, expressly name the defendant William S. Whitlock, but it is well settled that every judgment may be construed and aided by the entire record. 2 Black on Judgments, sec. 613, and citations; 1 Freeman on Judgments (4th ed.), secs. 50a, 50b, 50c, and cases cited; Taylor vs. Branham & Co., 35 Fla. 297, 17 South. Rep. 552. Applying this rule to these judgments, we find from the records in which they were rendered that William S. Whitlock

applied for leave to defend them, and that he was made a party defendant; and by his petition had been removed for trial from the State to the Federal Court. That he interposed the only plea upon which the issue was made, by which he took the burden of the defense from his tenants, expressly asserting their status, and resting the defense upon *his title as owner*. The cases were submitted to the jury solely upon the issue presented by his *plea*, and the verdicts in both cases were: "We, the jury, find the defendants guilty," etc. The judgments were loosely entered, but aided by the pleadings, record and verdicts, it is manifest that William S. Whitlock's title to the premises litigated, as presented and put expressly in issue by his plea, was passed upon and adjudicated against him, and in favor of the plaintiff's title. It has been frequently held that if a party is interested in the subject-matter of a suit, and does in fact appear and exercise the right of participation in the defense, as if he were a technical party upon record, he can not afterwards be heard to contend that he is not bound and concluded by the judgment or decree to the same extent that he would have been if made a technical party to the proceeding. Parr vs. State, 71 Md. 220, 17 Atl. Rep. 1020; Sevey vs. Chick, 13 Maine, 141; Tyrrell vs. Baldwin, 67 Cal, 1, 6 Pac. Rep. 867; McNamee vs. Moreland, 27 Iowa. 96; Jay vs. De Groot, 2 Hun, 205; 2 Black on. Judgments, sec. 540. Besides this, William S. Whitlock, the record shows, alone took the judgment to the Supreme Court of the United States by writ of error, the bill of exceptions in which asserts that he was a party to the judgment, and to the motion for new trial therein; and the judgment was affirmed, as against him, by that court. Jones vs. Buckell, 104 U. S. 554. These

judgments in ejectment, standing, as they do, in full force and unreversed, must be held to be an adjudication in favor of the plaintiffs therein against whatsoever title William S. Whitlock had or held, or could have set up or asserted *at the time of the trials* thereof, whether he brought such titles forward at the trial or not. Caperton vs. Schmidt, 26 Cal. 479, S. C. 85 Am. Dec. 187, and cases cited in notes. Sturdy vs. Jackaway, 4 Wall. 174; 1 VanFleets Former Adjudication, sec. 183, and cases cited.

The mortgage sought to be enforced by the appellant, executed by William S. Whitlock to Daniel B. Whitlock, and covering the same property involved in those ejectment suits, having been made during the pendency of those suits against William S. Whitlock, is bound and precluded by the judgments in those suits, to the effect that the mortgagor, William S. Whitlock, had no title to the property, and consequently could not give a valid mortgage thereon. Murray vs. Ballou, 1 Johns. Chy. 566; Newman vs. Chapman, 2 Randolph, 93, S. C. 14 Am. Dec. 766, and authorities cited in notes. A purchaser *pedente lite* is bound by the judgment or decree rendered against the party from whom he makes the purchase, as much as though he had been a party to such judgment or decree himself. Inloes' Lessee vs. Harvey, 11 Md. 519; Sheridan vs. Andrews, 49 N. Y. 478; Tilton vs. Coefield, 93 U. S. 163; 2 Black on Judgments, secs. 550, 655, and citations; American Exchange Bank vs. Andrews, 12 Heisk, 306; Russell vs. Place, 94 U. S. 606; Castle vs. Noyes, 14 N. Y. 329.

When the defendant's ancestor, Robert M. Shoemaker, looked into the records to ascertain the status of the title to this property before investing his

money therein, that record presented to him the following facts: 1st. That the older mortgage to Waterbury and Marshall was unconditionally paid and satisfied. 2d. That his grantors, the Buckells and Francis E. Yale, by their suits in ejectment against William S. Whitlock had tested the title, as between them, to said property, resulting in adjudications in favor of their title, and against whatever title William S. Whitlock had or held at the time of such adjudications; and that William S. Whitlock had not subsequently acquired any other title than he then held. 3d. That pending those ejectment suits William S. Whitlock executed the mortgage sought to be, enforced herein. Under these circumstances Robert M. Shoemaker was not required to take any notice of the mortgage made pending the ejectment suits, but had a right to rely upon the settled law in such cases, that the mortgage so made was bound and precluded by the judgments in the ejectment suits against the mortgagor, William S. Whitlock, as much so as though the mortgagees themselves had been direct parties to such suits. Such mortage can not now be enforced against the property in the hands of the defendants other than William S. Whitlock.

The decree below dismissed the bill as to all of the defendants. This was improper, so far as the defendant William S. Whitlock is concerned. He appeared in the case, but put in no defense, and the bill was taken as confessed against him; but inasmuch as the answering defendants showed that the property in their hands was not subject to the lien of the mortgage sought to be enforced, no decree subjecting the property in their hands to foreclosure and sale there-

15

under would have been proper; but, under the circumstances, the court should have rendered a personal decree against William S. Whitlock for the amount due upon the bond intended to be secured by the mortgage, and dismissing the bill as to the other defendants, without day, with their costs.

The decree appealed from is affirmed in part, and reversed in part, with directions for the entry of a decree in conformity to this opinion. The costs of the appeal to be paid by the appellant.