MILTON PARK ET AL. V. CHARLES KRIBS, RECEIVER

Decided December 19, 1900.

**1. Building and Loan Association—Stockholder's Right of Rescission—Fraud.**

Where a stockholder in a building and loan association was induced to subscribe for its stock by fraudulent representations of its agent, he may rescind his contract, after the corporation has been declared insolvent and a receiver appointed, where the rights of third parties have not intervened since he became a stockholder, and he has never participated in any of the proceedings of the company.

**2. Same—Want of Diligence in Discovering Fraud.**

Want of diligence in discovering the fraud will not alone, where the rights of third parties have not intervened, affect the stockholder's right to rescind. See the opinion for facts held not to show laches on the part of the stockholder in discovering the falsity of representation as to the solvency of a foreign corporation.

**3. Same—Stockholder's Rights in Settlement.**

Where a borrowing stockholder in a building and loan association was induced to subscribe for the stock by fraudulent representations of an agent of the association as to its solvency and profits, he is entitled to a rescission of the contract of subscription, and to have the amount paid by him as dues on his stock credited on the debt he owes the association.

**4. Attorney Fees Stipulated in Contract.**

Attorney fees stipulated for in a contract will not be allowed in favor of a party who has not carried out the contract, although suit is brought and a recovery had in part on such contract.

APPEAL from Dallas. Tried below before Hon. W. J. J. SMITH.

*Kearby & Muse,* for appellants.

*Hill & Dabney,* for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—This suit was instituted by the appellee, Charles L. Kribs, as receiver of the Granite State Provident Association, incorporated under the laws of the State of New Hampshire, against Milton Park and his wife, Alice Park, to recover judgment on a note for $1500 executed by them, dated October 28, 1895, with interest and attorney's fees, and for a foreclosure of a lien on certain residence property belonging to defendant, located in the town of Oak Cliff, Texas. The petition, among other things, alleged that on the 18th day of March, 1896, David Taggart was appointed receiver of said company by the Supreme Court of New Hampshire, and that thereafter, in the year 1896, the plaintiff, Charles L. Kribs, was appointed receiver for the said corporation, for the State of Texas, by the District Court of Dallas County, Texas. That owing to the insolvency of said association it has been enjoined from transacting further business, and a receiver appointed therefor. That no stock dues are now being collected, nor can be, and that the scheme of plaintiff and said association can not now be carried out; that said shares can never mature, and the bond and obligation of borrowers can never become due and payable according to the tenor and effect thereof; that the affairs of said association are being wound up. That the District Court of Dallas County, as well as the court of New Hampshire, have declared all obligations of borrowers and stockholders due and payable, and plaintiff has been ordered to collect the same by suit, if necessary.

Plaintiff alleged that Milton Park made application for fifteen shares of stock from the loan fund, of the par value of $200 each, agreeing to pay on account of such shares $1 per month until each share became worth par, in accordance with the rules of said association. That on the 15th day of August, 1895, in compliance with his application, certificate No. 31,984 was issued to him, representing seven and one-half shares of the stock applied for; and in case he did not desire a loan, to pay him the sum of $1500 upon the surrender of said certificate after maturity. That said Milton Park, joined by his wife, Alice Park, made, executed, and delivered to said association their written obligation, denominated installment bond, whereby they acknowledged themselves to be bound unto the Granite State Provident Association in the sum of $1500, conditioned that if said Milton and Alice Park should pay the sum of $20 per month in advance on the 15th day of each month, until seven and one-half shares of stock in the homestead fund should be of par value, then said obligation should be void. But that if default should be made, according to the rules and regulations of said company, then said bond should remain in full force and effect, and should, at the option of the association, or its assigns or successors, become due and payable, with all sums of money which at that time should be due to said association; and if said obligation should be placed in the hands of an attorney for collection, defendants would pay the further sum of 10 per cent upon the amount due, as attorney's fees. And that if proceedings should be commenced in any court to collect said amount, then they agreed to pay the additional sum of

$200 as attorney's fees. That in order to secure the payment of said bond defendants did, on the 28th day of October, 1895, make and execute a deed of trust whereby they conveyed to L. M. Dabney, trustee, lot No. 7, in block 43, of Oak Cliff, according to the map of said city, whereby plaintiff avers that a lien was created on the lot above described, to secure the payment of said bond; that in pursuance of the plan of said association Milton Park did, on the 28th day of October, 1895, make, execute, and deliver to said association his obligation in writing whereby he promised, five years after date, to pay to the order of said association the sum of $1200, with interest thereon at the rate of 6 per cent per annum until maturity, payable semiannually on the 28th days of October and April in each year; and to secure said note said Milton Park, joined by his wife, executed a deed of trust upon the property hereinbefore described, to L. M. Dabney, trustee, which is duly recorded and was made the first mortgage upon said property for the purpose of being negotiated by said association, but was never carried into effect.

Plaintiff further represents that on the 14th day of October, 1890, A. J. Holt and wife, Emma Holt, as owners of the premises hereinbefore described, executed and delivered two obligations in writing, one in the sum of $400 and the other for the sum of $2000; the first due October 1, 1891, and the other due October 1, 1895, payable to the order of the Lombard Investment Company, each with interest at 6 per. cent, and as security executed their deed ot trust in the usual form upon said property, which plaintiff avers created a valid lien upon the premises hereinbefore described. That Milton Park and wife purchased the property from Holt and wife, and as part of the purchase money assumed the payment of the notes above described, made by Holt and wife to the Lombard Investment Company. That when the loan was made by the Granite State Provident Association to the defendants, it was with the express understanding that the amount so borrowed was to pay off the Lombard notes on which there was due at the time by the defendant a balance of about the sum of $1500, and that the plaintiff should have a first lien upon the premises to secure the same, and that said $1500 was so applied by the association at the request of the defendant; and it was expressly agreed that said association was to be subrogated to the lien of the said deed of trust, all of which was recited in the deeds of trust made by said defendants, Park and wife, to the association; that defendant, though notified of the insolvency of said association, the order of the court declaring said debt due, and though often requested, have failed and refused to pay the same or any part thereof, and plaintiff has been forced to place the claim in the hands of an attorney and sue thereon for collection. Plaintiff prays for judgment for the sum of $1500, with interest thereon from the date of bond at the rate of 6 per cent per annum, and attorney's fees, and all costs of suit, and that a lien be declared upon the premises hereinabove described, and that plaintiff be subrogated to the lien of said deed of trust in favor of said Lombard Investment Company as the same existed on the 14th day

of October, 1890, and to the lien of A. J. Holt and wife, retained by them December 9, 1890, and that the lien be foreclosed on said premises; and in event plaintiff should be mistaken in the nature of the relief he is entitled to receive, he prays that the several instruments be declared a part of one and the same transaction, and the lien established upon said premises by virtue of any or all of them to secure the debt therein, and that said lien be foreclosed as against both the defendants, and that such relief be granted as the plaintiff may be entitled to receive in the premises.

Defendant answered, (1) a general denial; (2) that defendants were husband and wife, and that the property upon which it is sought to have the lien foreclosed is, and was at the time of the execution of the deed of trust, the homestead of defendant, which was well known to the association and its agents at the time of making the loan; (3) they denied specifically that plaintiff was entitled to be subrogated to the lien on the property securing the Holt note. They allege that said note was fully paid by the National Exchange Bank before the loan was made by them to the association, and that by reason of such payment the lien to secure such note was released and discharged. Defendants further allege that said association undertook to transact its business in Texas, about July, 1895, and represented to the said Milton Park and to the public that it was a solvent institution, paying dividends and profits to its shareholders, and that said association had $100,000 surplus funds then on hand with which to make loans in Texas; that said sum was on deposit for said purpose. Defendants show that said association fraudulently procured from one of the promoters said sum with the design and purpose to mislead and deceive the public and especially those whom it could induce to become shareholders, and for the purpose of giving said association color of solvency, when in fact said association had no intention or purpose of using said money in Texas, or in making loans, and said sum did not belong to said association, and said sum was withdrawn from said association by said promoter so soon as it commenced business in Texas, in accordance with the original fraudulent purpose so to do between said association and said promoter. That said association was in fact insolvent long prior to its commencing business in Texas, all of which it well knew, and defendants were ignorant of its true condition, or of its fraudulent designs and purposes aforesaid. That the system of issuance of stock of said association was in order to enable it to loan money at usurious rates of interest; that the subscription of stock by the said Milton Park and the agreement to loan him money on the security alleged herein was all one transaction, and the said Park was induced to subscribe for stock upon the agreement aforesaid to loan him the sum of $1500. And that the said subscription of stock, its issuance and the execution of said deeds of trust, was all one transaction in order to enable said association to loan money at usurious interest as aforesaid. That said association represented to the said Milton Park that seven and one-half shares of stock was the amount of stock requisite to make said loan, but represented that said association

was solvent, paying large dividends and profits, and that subscription to fifteen shares of stock of $200 each would sooner enable the payment of said loan aforesaid agreed upon, supplemented by the dividends and profits thereon, which representations were believed to be true and relied upon by the said Park, and induced thereby, he subscribed to said fifteen shares of stock Nos. 31984 and 31985, seven and one-half shares each number. That said Milton Park paid upon said certificates of stock the sum of $15 monthly for August and September, 1895, and thereafter paid the sum of $32.50 monthly from September 15, 1896, to March 1897, inclusive, a period of six months, aggregating $225 paid by said Park to said association. That of said sum $7.50 was for monthly interest, and $7.50 for stock dues to be applied as a credit upon the principal sum borrowed, and $10 was monthly premium for said loan. Said association pretended to make said loan upon said certificate No. 31984, and induced said Milton Park to take said other certificate No. 31985 upon the representations aforesaid, and upon consideration that the $7.50 monthly dues thereon was to be credited also upon the principal sum loaned, and upon the further representation that when said two certificates should amount to $100 paid thereon said trust deeds and certificate would be canceled and annulled, and said $1500 obligation receipted, released, and discharged. Defendant Park avers that said obligation sued on is usurious interest and stock dues aforesaid, and the sum of $225 should be a credit on said obligation sued on, and that for whatever sum, if anything, plaintiff should recover against said Milton Park, that the same be without interest on account of said usurious contract.

Plaintiff in reply to said answer again reiterated with more particularity the execution of the note by A. J. Holt and wife, and that the same was secured by a valid lien upon the premises, and that when defendants purchased the property they assumed payment of said lien. They further specifically set up the facts relating to the taking up of said note by the National Exchange Bank; alleged that this was done by agreement between the bank and Park and the agent of the association, and because of the fact that the defendant had been delayed in procuring the money to take up said note; and that it was agreed that the bank should take up the note and hold it with the express understanding that the money which the association loaned Park should be paid the bank, and that the association would be subrogated to the whole lien. There was a trial which resulted in a judgment for plaintiff, and defendants have appealed.

*Conclusions of Fact.*—The Granite State Provident Association was incorporated under the laws of the State of New Hampshire, with its principal office and place of business in the city of Manchester in said State. The company is what is known as a building and loan company, it being a condition that it will only loan to its stockholders, and then for no greater amount than the face of their stock. Said association filed its charter in the office of Secretary of State of the State of Texas,

and procured a permit to do business in Texas on the 9th day of May, 1895.

On the 1st day of September, 1895, Milton Park executed one of the blank applications furnished by said association, by the terms of which he subscribed for fifteen shares of stock in the loan fund of said association, of the par value of $200 each, and agreed to pay on account of each share $1 per month at the office of the association in Manchester, New Hampshire, until each share became worth par. Said application stipulated that the shares were to be issued upon certain conditions, among which were the following:

"6. Before receiving a loan the shareholder shall assign to the association one share for each $200 borrowed, and execute notes for the amount of the loan, and mortgages to secure the notes, monthly dues, fire insurance, interest, premium, taxes, and repairs, or give such other security as shall be satisfactory to the board of directors or the executive committee of the association.

"7. Upon maturity of the shares so assigned, the association agrees to release the borrower's mortgage and indebtedness.

"8. Each borrowing shareholder shall pay 6 per cent interest upon his loan. In consideration of obtaining priority of loan, and of the services rendered and liabilities assumed by the association, the borrower shall also pay the association at its office in Manchester, New Hampshire, a monthly premium of not less than 66⅔ cents on each share until said loan has been recalled."

On the 21st day of January, 1896, Milton Park and his wife, Alice Park, executed to the association what was called an installment bond, by the terms of which they bound themselves to pay to the association the sum of $1500, conditioned, among other things, that said Park and wife pay to the association $20 in advance on the 15th day of each month until the seven and one-half shares in the homestead fund of the association represented by certificate No. 31984 should be worth $200 per share, being $2.66 per share monthly on each of said seven and one-half shares, and complying with the conditions indorsed on said certificate with all the rules and by-laws of the association. It was further agreed that if the obligation was placed in the hands of an attorney for collection they were to pay 10 per cent upon the amount as attorneys' fees, and if proceedings should be commenced in any court, whether law or equity or probate jurisdiction, to collect said amount, then the additional sum of $200 as reasonable attorneys' fees. This bond also stipulated that it was given in lieu of and in substitution of one certain note for $2000 described in a deed of trust executed by A. J. Holt and Emma Holt to one Gish, trustee, recorded in book 49, record of deeds, etc., of Dallas County, and that the lien of said deed of trust is hereby continued to secure the payment of this note. Park and wife also on the same day executed a deed of trust upon the property described in the petition to secure the payment of said installment bond. These instruments were dated October 28, 1895.

On the 14th of October, 1890, A. J. Holt and wife, Emma Holt, exe-

cuted their notes to become due on the first day of October, 1895, for $2000, with 6 per cent per annum interest from date, the same being a vendor's lien upon the property described in the petition. Said Holt and wife also executed a deed of trust to secure said note upon said property described in the petition, which deed of trust is recorded in book 49, page 472, of the record of deeds of trust of Dallas County.

Park and wife, on the 21st day of January, 1896, executed a second obligation to the association for $1200, due five years after date, with interest at the rate of 6 per cent per annum, payable semiannually. This note expressed upon its face that it was given in lieu of a note substituted for the Holt note of $2000, and the lien which secured said note. This note was further secured by a deed of trust on the property, and is in the usual form of deeds of trust, and was duly recorded. The certificates of stock issued to Park contained on the back thereof the same conditions which were embraced in the application signed by him to become a stockholder in said company. The note for $1200 and the deed of trust to secure the same is made the superior lien on the premises described in the petition. Upon the payment of the installment bond, the association was to pay off the note and cancel the second deed of trust. In accordance with the rules of the company when the loan was completed, Milton Park assigned and transferred to the association fifteen shares of stock, and appointed an attorney to transfer the same on the books of the association, which it has since held.

The object of Park taking stock in the association was for the purpose of procuring a loan from it of $1500 with which to take up the Holt note maturing on October 1, 1895. Owing to delay on the part of the association in furnishing the money, an arrangement was made between Park and the National Exchange Bank of Dallas, through its president, Mr. Simpson, and Dabney, the attorney of the association, by which the bank was to take up the Holt note for $2000, of which amount the bank furnished $1500, and $500 was furnished by Milton Park, the agreement being that the bank should hold the note, and as soon as the association procured the money to complete the loan, it was to be paid to the bank to refund the $1500 advanced by it in the taking up of the Holt note. It was further understood that the association should be subrogated to the lien and all the rights as the holder of the Holt note.

On the 21st of January, 1896, the agent of the association received from the association the money to complete the loan to Park, and by consent of Park paid the same to the bank to refund to the bank the amount of money advanced by it on the Holt note. The Holt note was then turned over to L. M. Dabney, the attorney for the association.

At the time that the deed of trust was executed by Park and wife the property therein described was their homestead, which was known to the attorney of the association, and it was a part of the agreement in the making of the loan that the association should be subrogated to the lien debt and securities of the Holt note.

In deference to the verdict of the jury we find that Park was induced

to become a stockholder in the association through the fraudulent representations of one Woodruff, the agent of the association, as to the solvency of said association, and its advantages over other companies, which statements Park relied upon. The Granite State Provident Association was insolvent at the time said Woodruff made these said representations, and at the time Park subscribed for stock in said association, and has ever since remained insolvent. Park has paid to said association on certificate No. 31984 the sum of $135, and on certificate No. 31985 the sum of $60. He also paid the attorney of the company $35 for the examination of the abstract, preparing papers, etc.

*Conclusions of Law.*—It is contended by the appellants under their first assignment of error that the court erred in peremptorily instructing the jury to find in favor of plaintiff foreclosing the vendor's lien upon the property described in the petition, for the reason that the evidence showed that the $1500 loan which this suit was instituted to recover was secured by a deed of trust on the homestead of defendants, and that the original vendor's lien given on said homestead had been paid off and discharged by the money borrowed by the defendant Park from the National Exchange Bank of Dallas. This contention requires us to examine the record to see if it is supported by the evidence. It is admitted that the Holt note was secured by a valid lien upon defendants' property. It is also undisputed that when Park made application to become a stockholder in the association, and for a loan, it was his intention that the association should be subrogated to all the liens and securities of the Holt note. The contention is that the action of the National Exchange Bank of Dallas in loaning the money to Park and in taking up and holding the Holt note at his request, operated as a payment of the note and a release and cancellation of the lien by which it was secured. Park's testimony in reference to this transaction is as follows: "I went to Mr. Simpson on the 22d of September, 1895, who was president of the National Exchange Bank, and procured an accommodation loan from him of $2000, with which to pay off the Holt vendor lien note. Mr. Simpson loaned me the $2000 on September 22d for that purpose. I did not draw it out of the bank, but had it transferred to my special account in the bank on the 22d of September, 1895, and on that date or the next day I gave a check to the bank for $500 to apply as a credit upon that sum of $2000 that was loaned to me. It was an accommodation loan by the bank to me on my personal obligation, without any security whatever. I instructed the bank to use the money in paying the Holt note, which was a vendor lien upon the property, which the bank did; I gave a check on my special account for $2060, the amount of the Holt note and interest, which overdrew my special account $60, which sum I deposited to balance the account with the bank. My purpose in making the application to the Granite State Provident Association for the loan was to float the lien on the homestead in the sum of $1500, and that they should extend the vendor lien thereon. I

borrowed money from Mr. Simpson, president of the National Exchange Bank, which was placed to my credit in case the Granite State Provident Association should (fail) to get the money or things fell through, that I would be able to take care of the note, as I did not want to be sued for failure to pay the note on the 1st of October. I did not give any note for the money borrowed from the bank, or any security, nor did he require any security. I directed Mr. Simpson to pay off the note with the money I had borrowed, and told him that I expected to get the money from the Granite State Provident Association to take up the $1500 borrowed from him, or would get it from some other company. At the time Mr. Dabney paid the money to the bank I thought he was getting a lien on the property. I was willing that he should have a lien." He further testified, on cross-examination, that it was understood that the money that he got from the association was to be a lien on the property. That when the bank took up the note it was marked paid, and he authorized Mr. Dabney, the attorney of the association, to have the bank return the note to be transferred to the association. He also testified that the two deeds of trust and the installment bond and note executed to the association were actually signed by him and his wife on the 21st day of January, 1896, and acknowledged and delivered on that day.

Simpson, the president of the National Exchange Bank, testified: "That on September 25, 1895, the National Exchange Bank loaned Milton Park $1500, and was instructed by him to use the proceeds in paying off the note of A. J. Holt and wife to the Lombard Investment Company for $2000." The Holt note, when taken up, was to be delivered to Mr. L. M. Dabney. When Park applied for this loan he stated that he wished to take up the Holt note above described, and that he had arranged a long time loan through or with Mr. Dabney. The delay was caused by the fact that the Lombard Investment Company had sold the note to some party in the Eastern States, and when the note was finally paid off and sent to me by the First National Bank of Kansas City, Mo., it had been canceled and marked paid. At the request of Messrs. Park and Dabney I returned the note and asked to have it transferred and not canceled, which was done. This caused several days' delay in winding up the transaction. The $1500 loan by the bank to Milton Park was used in taking up the Holt vendor lien note for Milton Park."

L. M. Dabney testified: "That an arrangement was made with Mr. Park that he was to borrow the money from the bank, and the bank was to send on that money and get the note and hold the note until the Granite State Provident Association could get the note from the bank and take it up. The bank agreed to do that, and that it would send for the note and hold it until we were ready to take it up." There was other evidence by the employes of the bank that a loan was made to Park and the note paid off by the bank and held by it.

The evidence we think is conclusive that at the time the bank loaned the money to Park to pay the Holt note upon the property it was under-

stood between all the parties that the bank should hold the note until the money was received from the loan company, when it was to be taken up by that company and the bank refunded the amount that it had paid out. The deeds of trust and note and bond signed and acknowledged by Park and wife on January 21, 1896, the day the association actually furnished the money, each recited that the association was to be subrogated to the securities and benefits of the Holt note.

Again, the evidence was conclusive that the bank, at the request of Park, returned the Holt note to the First National Bank of Kansas City, Mo., to be transferred, instead of being marked paid. It was further shown that all parties knew that the property was the homestead of defendant, and that they could not then create a valid lien thereon. Unless the association was to be subrogated to all the rights and securities of the Holt note, it was getting no security. The arrangement by Park with the bank was of a temporary character. He told the bank that as soon as the association made the loan the bank would be refunded the amount it had paid out. The amount was paid to the bank by Dabney, the attorney for the company. The Holt note was delivered to Dabney at the time he paid the bank.

Mr. Sheldon, in his work on Subrogation, says: "One who pays a debt at the instance of a debtor under such circumstances that it appears to have been contemplated by the parties that he should become entitled to the benefit of the security for the debt held by the creditor against the debtor, may, as against the debtor and the debtor's estate, be subrogated to the benefit of such security and of the debt which he has discharged. And a party who has paid the debt at the request of the debtor under circumstances which would operate a fraud upon him if the debtor were afterwards allowed to insist that the security for the debt was discharged by his payment, may also be subrogated to the security as against the debtor." Sheldon on Subrogation, 2 ed., sec. 247. This rule has been approved by our Supreme Court. Oury v. Saunders, 77 Texas, 281; Wahrmund v. Merritt, 60 Texas, 24; Fievel v. Zuber, 67 Texas, 281; Dillard v. Kaufman, 58 Texas, 696.

The statement in the bonds, note, and deeds of trust executed on January 21, 1896, in reference to the question of subrogation was the last declaration by Park and wife as to their intention, and they then declared that the association was to be subrogated to the benefit of the security and debt evidenced by the Holt note. This declaration we think binding upon them. Mustain v. Stokes, 38 S. W. Rep., 758; Hicks v. Morris, 57 Texas, 658; Loan Co. v. Paschal, 34 S. W. Rep., 1001; Whitselle v. Loan Agency, 27 S. W. Rep., 309; Loan Co. v. Blalock, 76 Texas, 89; Garrett v. Bank, 15 S. W. Rep., 224.

We conclude that the court did not err in instructing a verdict in favor of plaintiff for a foreclosure of the vendor's lien upon the land described in plaintiff's petition. These remarks dispose of all the assignments of error presented in appellant's brief, and for the reasons above stated, said assignments are overruled.

The appellee has cross-assigned errors, and in his sixth assignment

he complains of the following paragraph of the court's charge: "If· you find and believe from the evidence that at the time Milton Park took stock in the Granite State Provident Association and applied for the loan sued on, one Woodruff, as the agent of said Granite State Provident Association, represented to said Park, as a matter of fact, that said association was solvent and in good condition, and that said representations, if any, were material, and that said Park believed such representations to be true and relied thereon, and that he was induced thereby to take said stock and apply for said loan, if you further find and believe that such representations ·were untrue and that said association was at the time insolvent and .in a failing condition, then you will return the following verdict: 'We the jury find for plaintiff against Milton Park, defendant, the .sum of $1524.83, and for plaintiff against all defendants for foreclosure of his lien on the land described in plaintiff's petition.'"

The objection made to this charge is, that its effect was to cancel the stock of appellant Park and give him credit on the note sued on for the amount of dues paid by him on his stock, which could not be done, be-. cause the evidence ·showed that the association was insolvent, and no action had been taken by Park to rescind his contract before becoming insolvent, and no diligence used by him to rescind before insolvency or afterwards. That he had never tendered his stock back to said association,. and that other persons, who were now creditors of the association, had subscribed for stock after the date of his subscription whose stock dues had not been returned to them.

In another paragraph of the charge the jury were instructed to .find for plaintiff a different sum, being a larger sum than that set out in the above paragraph complained of, in the event they found that Park was not induced to become a stockholder by. the fraudulent representations of· Woodruff, the company's agent. The difference between these sums is the amount paid by Park as dues upon his stock. The record does not show that any indebtedness was incurred by the association after defendant became a subscriber to its stock. It is shown that other persons ¬subscribed for stock therein, but it is not shown that they were induced to do so on the faith of defendant's subscription, or, if they were so induced, that the payment made by them on stock had not been returned to them. The defendant became a subscriber to the stock for the purpose of· procuring a loan from the association. He would not have taken stock had he not believed that the loan would be made. The transaction in reference to the loan was closed on January 21, 1896. On that day, in accordance with the rules of the association, Park transferred and delivered to the association his fifteen shares of stock, which they have since held. On March 18, 1896, less than two months after the money was loaned, a receiver for the company was appointed by the Supreme Court of New ·Hampshire on the ground that it was insolvent. In June, 1896, a receiver was appointed for the company in Texas. This suit was instituted September 1, 1897. The defendant promptly answered setting up the fraudulent representations upon the faith of

which he alleged he was induced to subscribe for the stock. The first question then presented is, can a stockholder in a building and loan association, who was induced to subscribe for stock therein by the fraudulent representations of an agent of such association, rescind his contract after the corporation has been declared insolvent and a receiver appointed, it not appearing that the rights of third parties had intervened after he became a stockholder, and it not being shown that he ever participated in any of the proceedings of the company?

It is conceded that the rule is established in England that a suit to rescind a stock subscription on the ground of fraud can not be maintained by a stockholder after proceedings have been taken to liquidate the affairs of the corporation on the ground of its insolvency. Thomp. on Corp., secs. 1439-1441; Cook on Corp., sec. 163.

Mr. Thompson on his work on Corporations, states that in the United States there does not appear to be any fixed rule as yet established. We think that it may be stated that the great weight of authority in this country is, that where there has been no lack of diligence on the part of the stockholder in discovering the fraud, or unreasonable delay in asserting his rights after discovering the fraud, or active participation in the management of the corporation, or that debts have not been contracted by the corporation after his subscription, one who has been induced to become a stockholder in a corporation by reason of its fraud, or that of its agent, is entitled to have the subscription rescinded and his stock canceled and the amount paid returned to him upon tendering back his stock. 2 Thomp. on Corp., sec. 1449; Cook on Corp., sec. 164; Robinson v. Dickey, 36 S. W. Rep., 499; Beal v. Dillon, 47 Pac. Rep., 317; Savage v. Bartlett, 78 Md., 561; 28 Atl. Rep., 414; Ramsey v. Manufacturing Co., 22 S. W. Rep., 719; Upton v. Tribilcock, 91 U. S., 45; Newbegin v. Bank, 66 Fed. Rep., 701; Bank v. Newbegin, 74 Fed. Rep., 135; Duffield v. Barnum, 64 Mich., 293.

The case of Robinson v. Dickey, above cited, was a suit by plaintiff against the State National Bank of Vernon, and Robinson, its receiver, to rescind and cancel a contract whereby plaintiff undertook to convey to the bank certain realty in the town of Vernon and rescind the contract whereby plaintiff acquired certain stock in the bank. The ground for rescission was framed on fraudulent representations made by the bank to plaintiff as to its solvency. The contract was executed in 1893; the bank failed in August, 1894, and a receiver was appointed in September, 1894. Plaintiff instituted his suit in January, 1895. The court found that the bank was insolvent in 1893, when the contract was made. The plaintiff recovered judgment in the trial court. On appeal to the Court of Civil Appeals for the Second District the judgment was affirmed.

The case of Savage v. Bartlett, supra, was a suit by the trustee of an insolvent corporation to recover of a stockholder his unpaid subscription of stock. The stockholder resisted payment on the ground that his subscription was procured by fraud on the part of the corporation. The defense was held good, the defendant having discovered the fraud with-

out laches and repudiated the contract before the trustee was appointed.

The case of Beal v. Dillon, supra, was a suit by an assignee of an insolvent corporation to recover the balance due on unpaid stock. The defense was that the defendant was induced to become a stockholder by the fraudulent representations of the company. The Supreme Court of Kansas, in passing upon the case, held the defense good. That court placed stress upon the fact that the record did not indicate that the corporation had incurred indebtedness after Dillon became a stockholder which remained unpaid at the date of the assignment, or that the rights of anyone, either as creditors or as stockholders, would be in any manner prejudiced by the defense made.

In the case of Ramsey v. Manufacturing Company, supra, it was held that a stockholder could recover moneys and property paid on stock where it was shown that such stockholder was induced to subscribe to the stock by the fraudulent representations of the company, notwithstanding the insolvency of the corporation.

The case of Newbegin v. Bank, supra, was a suit by the plaintiff against the bank and its receiver to recover money alleged to have been paid the bank for stock therein by reason of false representations made plaintiff by its cashier. The United States Circuit Court for the Eighth District held that plaintiff could recover, it being shown that the rights of third parties had not intervened either as creditors or stockholders, and there being no laches on the part of plaintiff. This case again came before that court and Judge Thayer, for the court, delivered an able and well considered opinion upholding the right of plaintiff to recover. That decision was approved in the later case of Wallace v. Bacon, 86 Federal Reporter, 555.

The case of Duffield v. Barnum Wire and Iron Works, supra, was a suit by plaintiff to recover back money paid for stock on the ground that it was obtained from him by the false representations of the defendant company. The corporation had become insolvent and made an assignment for the benefit of its creditors when the suit was brought. It was shown that debts had been created and the rights of creditors intervened after plaintiff became a stockholder, and that he had not used diligence to ascertain the truth or falsehood of the representations made him. He had participated in the meetings of the stockholders and received dividends. The court held that under the facts there shown the plaintiff could not recover, basing the opinion on the ground that the rights of creditors and insolvency had both intervened. The decision is an exhaustive one, and recognizes the right of plaintiff to recover where the rights of third parties have not intervened.

It can not be said that defendant Park was guilty of laches in discovering the condition of the company and the falsity of the representations made to him to induce him to take stock therein. The company was a foreign corporation, having its principal office in a distant city and State. The defendant resides in Texas. An agent of the company from the home office visited Texas and solicited defendant to take

stock in the company. He falsely represented the condition of the company to Park. Relying upon his representations, Park subscribed for fifteen shares of stock, and made application for a loan in the association. Within a few months thereafter the association was declared insolvent and a receiver appointed by the Supreme Court of the State of New Hampshire. To have discovered the fraud and the true condition of the company he would have had to go to another State and there investigate its condition. This we do not think he was required to do. The company was in fact insolvent at the time the representations were made to Park.

Again, if it could be held that Park was guilty of laches, this alone would not bar his right to rescind. The reasons for requiring diligence on the part of a stockholder who has been induced to take stock by fraud, to take prompt measure to discover the fraud and to repudiate and rescind the contract, are (1) that by remaining in the company he may mislead others into becoming members of it upon the credit of his name, when otherwise they would not do so; and (2) he may induce others to deal with a corporation and give credit to it for the same reason. Upton v. Englehart, 3 Dill., 502; Directors, etc., v. Kisch, Law. Rep. 2 H. L., 99. Under the facts in this case, these reasons have no force because it is not shown that the rights of creditors or stockholders, who became such on the faith of Park's subscription, have intervened.

It is held that want of diligence alone, in discovering fraud when the rights of third parties have not intervened, will not affect the right to rescind. Dayton v. Moore, 47 Mich., 173. This holding is approved in the later case of Duffield v. Barnum Manufacturing Company, supra. The principle is also recognized in the cases of Upton v. Englehart and Beal v. Dillon, supra.

The jury having found that Park was induced to become a subscriber by the fraud of the association, and there being no evidence showing that the rights of third parties had intervened, either as creditors or as stockholders, after Park's subscription thereto, we conclude that there is no error in the court's charge. Park was entitled under the facts to have the amount paid to the company as dues on stock credited on the debt he owed the company. We therefore overrule appellee's sixth cross-assignment of error.

Appellee, under his fifth and tenth cross-assignments of error contends that the court erred in both paragraphs of its charge in not including attorneys' fees in either of the amounts which the jury was authorized to find for plaintiff. The contract sued on provided that in the event of suit the defendants were to pay attorneys' fees in an amount therein stipulated. There was no error in the court's charge in refusing to allow attorneys' fees. The contract of the parties had not been carried out. By the insolvency of the association there was a premature abandonment of the contract. The terms of the contract contemplated that the loan should run five years.

In proceedings of this nature in winding up the business of an insolvent corporation the assignee does not recover strictly upon the contract.

He is entitled to recover the amount of the loan, with legal interest thereon. 4 Am. and Eng. Enc. of Law, 2 ed., p. 1081; Thomp. on Build. and Loan Assn., sec. 319.

The above remarks dispose of all the cross-assignments of appellee presented in his brief.

The judgment is affirmed.

*Affirmed.*