## REEVES v. POWELL. (No. 6791.)*

(Court of Civil Appeals of Texas. Austin. Oct. 22, 1924. Rehearing Denied Nov. 19, 1924.)

**1. Joint-stock companies and business trusts ⬤➡6—Purchaser of stock entitled to rescind for fraud, subject to rights of creditors without knowledge of fraud.**

One contracting to purchase beneficial interests in joint-stock association is entitled to have contract canceled because of fraudulent representations inducing him to make contract, subject, however, to intervening rights of creditors without notice of fraud.

**2. Bankruptcy ⬤➡140(½), 142—Trustee entitled to all property of bankrupt; trustee entitled to property conveyed in fraud of creditors.**

A trustee in bankruptcy is authorized to receive all property of bankrupt, and also that conveyed in fraud of creditors before bankruptcy.

**3. Joint-stock companies and business trusts ⬤➡15(1)—Purchaser of stock permitting use thereof held a shareholder as to creditors acting thereon.**

Where purchaser of stock of business trust, seeking to rescind contract for fraud, entered into optional rescission contract, under which trustees were given 90 days to make good their representations, held, that until expiration of such time, at least, in so far as creditors without notice of alleged fraud were concerned, purchaser's status was that of a shareholder.

**4. Joint-stock companies and business trusts ⬤➡15(1)—Shareholder permitting his stock contribution to be used by business trust cannot assert fraud as against creditors.**

Where purchaser of stock of business trust, seeking to rescind contract for fraud, entered into optional rescission contract, whereby trustees were given 90 days to make good their representations, and permitted stock contributions to be used during that time, held, that purchaser acquiesced in fraud and cannot assert it against creditors.

**5. Joint-stock companies and business trusts ⬤➡15(1)—Shareholder cannot withdraw contribution until all debts of trust business estate paid.**

A shareholder in a pure business trust cannot withdraw his contribution until all indebtedness incurred during time he was shareholder is paid, although he became shareholder upon fraudulent representations of trustees, provided creditors have no notice of such fraud.

Appeal from Denton County Court; E. I. Key, Judge.

Action by J. H. Reeves, trustee, against M. C. Powell. From a judgment for defendant, plaintiff appeals. Reversed and rendered.

Geo. M. Hopkins, of Denton, for appellant. Sullivan, Speer & Minor, of Denton, for appellee.

BLAIR, J. J. H. Reeves, as trustee in bankruptcy for the United Food Distribution Company, a joint-stock association operating under a declaration of trust, instituted this suit against M. C. Powell to recover $500 paid him by the trustees of the bankrupt food company, about 30 days before it went into voluntary bankruptcy, alleging that the money so paid was a refund to him of his contribution to the capital stock or trust fund, and was without a valuable consideration, and was in fraud of creditors who incurred debts during his membership in the said bankrupt food company; and, further, that such payment was made by the trustees for the purpose of hindering, delaying, and defrauding creditors.

Appellee, Powell, answered by a general demurrer, several special exceptions, and a specific denial that the trustees of the bankrupt food company paid the $500 for the purpose of hindering, etc., the creditors, alleging and proving substantially the following facts: That on March 10, 1920, he (appellee) was induced, through the fraudulent representations of the trustees and the agents of said bankrupt food company, to purchase 50 shares of stock or "beneficial interest" in said food company; that a few days thereafter he learned of the fraud, and promptly repudiated his contract of purchase, and demanded a return of his purchase money; that a few days thereafter the trustees of said food company, himself, and other stock purchasers in a like position to him, who claimed fraud induced their purchases, entered into an escrow contract, whereby $3,600, the aggregate of all their subscriptions, was placed in a certain bank for 90 days, during which time the trustees were given an opportunity to make good the representations inducing the stock sales, and in satisfying these purchasers, generally, with the understanding that they could exercise their option to retain the stock, or obtain a refund of the purchase price; that 30 days additional time was granted by the purchasers, under the same terms as the 90-day extension was given; that on July 8, 1920, the trustees, by mutual consent of the parties, withdrew the $3,600 to be used in carrying on the trust estate, and deposited in its stead a bond for that amount; that on October 1, 1920, the date agreed upon for said purchasers to declare their option to retain the stock or receive a refund of the purchase price, they demanded a return of the purchase price; that it was not promptly paid, and one of the parties to the contract immediately instituted suit to enforce it; that on October 10, 1920, the trustees refunded the purchase price of the stock, of which amount appellee received $500; that at the date of the refund appellee did not know the trust estate owed any debts, and it was represented to him that they did not.

In addition to the above facts, it was shown

---

⬤➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction January 14, 1925.

by the only two creditors testifying that their debts, aggregating $1,141.26, on which a 27 per cent. dividend had been paid, were principally incurred in July and August, 1920, at the time appellee's stock subscription was being used to carry on the business, and before its refund to him. The bankrupt food company's property, including this and all other similar claims, will pay only a small portion of its debts.

At the conclusion of the testimony, appellant requested a peremptory instruction, on the ground that, under his pleadings and the testimony, such withdrawal of the $500 by appellee was without consideration, and was a legal fraud upon the creditors who had incurred debts during the time it was a part of the trust fund, without notice of the fraud inducing the stock purchase, which was refused by the court. The court only submitted to the jury the issue of whether the payment of the $500 was made for the purpose of hindering, delaying, and defrauding creditors, which they answered in the negative. Upon this verdict the court rendered judgment for appellee; hence this appeal.

[1] We will dispose of the questions raised without following the order of the briefs. It is asserted by appellant that the court erred in refusing his peremptory instruction, because, under the testimony adduced, no consideration was shown for the payment of the $500 to appellee by the trustees. As between the parties, this contention is without merit. It is the settled law that appellee, subject to the rights of creditors without notice of the fraud, would have the right to cancel his contract for the purchase of stock because of the fraud which induced him to make it. His contract was voidable at his instance because of the fraud inducing it, and he was entitled to have it canceled for such fraud, subject, however, to the intervening rights of parties dealing with the subject-matter, whose rights became fixed without notice of the fraud. Burleson v. Davis (Tex. Civ. App.) 141 S. W. 559; Davis v. Burns (Tex. Civ. App.) 173 S. W. 476; Robinson v. Dickey, 14 Tex. Civ. App. 70, 36 S. W. 499; Mitchell v. Hancock (Tex. Civ. App.) 196 S. W. 702; Parks v. Kribs, 24 Tex. Civ. App. 650, 60 S. W. 905.

Appellant also contends that the court erred in refusing his request for a peremptory instruction, upon the ground that, under his pleadings and the evidence, the withdrawal of the $500 by appellee was a legal fraud upon the creditors, who, without notice of the fraud inducing the stock purchase as alleged by appellee, had incurred debts against the trust company during the time said stock subscription was a part of the trust fund.

[2] We are of the opinion that this contention is correct, under the pleadings and the evidence adduced. A trustee in bankruptcy is authorized to receive all the property of the bankrupt, and, in so far as here involved, that which was conveyed in fraud of creditors before bankruptcy. Our conclusion as to the nature of the fraud is based upon the nature of the fund paid appellee, as well as the relationship of the parties thereto. The United Food Distribution Company was a joint-stock association, operating under a declaration of trust, which was as nearly a pure business trust as could be written, with a capital stock of $100,-000,000, divided into 10,000,000 shares of $10 each. The title to all property was vested in the trustees, with full power of disposition. The sale price of stock, and such property or money as the trust company obtained in the conduct of its business constituted the trust fund. The scope of the trust was the right to engage in practically all commercial business, but particularly in operating a chain of wholesale and retail grocery stores—the only business enterprise which it ever undertook, so far as the record discloses. Full power was given the trustees to fill vacancies of trustees, without limitation or authority of the shareholders. General and plenary power was granted the trustees to carry on the trust's business, without let or hindrance of the shareholders. No provisions were made for any kind or character of meeting of the shareholders. At the risk of being criticized for lack of brevity, we will set forth some of the general articles of this trust agreement. Article V reads:

"*Powers of Trustees:* The trustees shall take and hold the title to all property at any time conveyed to and held by them, and included in the trust estate, and subject only to the specific limitations herein contained. Said property shall be held by the trustees jointly (under the same tenure as joint tenants would hold the same at common law, and not as tenants in common) in trust, in accordance with the terms of this instrument, and administer and dispose of same for the benefit of the holders of all certificates issued hereunder in proportion to their respective interests as represented by said certificates. The trustees shall have the absolute control, management, and disposition of all the trust estate, and shall, likewise, have the absolute control of the conduct of all its business; and shall, without further authority from, and without any control by, the certificate holders, possess each and every one of the discretionary powers hereinafter enumerated; provided, however, that the following enumeration of specific duties and powers shall not be construed in any way to limit or curtail the general powers in any by this instrument conferred and intended to be conferred upon the trustees."

Subdivision (a), under article V, is as follows:

"The trustees shall exclusively and absolutely, and without any let or hindrance from the certificate holders, have the power to engage in any one or more of the businesses or activities specified in article IV hereof; and may do so whensoever and wheresoever they deem best."

Then follow subdivisions (b) to (x) both inclusive, defining specific powers of the trustees, which, so far as language is concerned, cover every phase of power that an individual could execute over his own property. Article XII is in part as follows:

"*Certificate Holders.* Section 1. (a) No certificate holder, as such, shall have any title in or to the trust estate or any part thereof. The sole interest of each certificate holder shall be in the obligation of the trustees to hold, manage, and dispose of the trust estate, and to account for same as in this instrument provided.

"(b) The shares represented by certificates of beneficial interest are to be and remain as to title, personal property only, and held, bequeathed, assigned, disposed of, and distributed as personal estate.

"(c) No certificate holder shall have a right to call for or demand or secure any partition or accounting during the continuance of the trust hereby created."

The trust instrument completely limited the personal liability of both the shareholders and trustees, and required the creditors to look solely to the trust estate or fund for their debts. Under the test laid down by our courts, as well as the Massachusetts courts, from whence such trust companies as the one here declared came, a pure business trust was organized. Some of the Courts of Civil Appeals do not recognize what is known as the common law or Massachusetts trust to exist in Texas. Davis v. Hudgins (Tex. Civ. App.) 225 S. W. 73; Wells v. Tel. Co. (Tex. Civ. App.) 239 S. W. 1001; McCamey v. Hollister Oil Co. (Tex. Civ. App.) 241 S. W. 689; Connellee v. Nees (Tex. Civ. App.) 254 S. W. 625; Hardee v. Adams Oil Co. (Tex. Civ. App.) 254 S. W. 602; Mills Co. v. Houston Oil Co. (Tex. Com. App.) 241 S. W. 122. The Commission of Appeals in the last-cited case, by inference, recognized the right of such trust estates to exist in Texas. The Supreme Court has from earliest times recognized the private trust as a valid legal relation. Connally v. Lyons, 82 Tex. 664, 18 S. W. 799, 27 Am. St. Rep. 935.

[3, 4] Appellee's status in this pure business trust was unquestionably that of a shareholder from the date of the issuance of the stock certificate to him, March 19, 1920, until October 1, 1920, the date of his demand for the refund of the purchase price of the stock. At least, this was his status, in so far as creditors without notice of the fraud pleaded inducing him to take the stock are concerned. It is true that early in April, 1920, he entered into an optional contract of rescission, but the date fixed by this contract for appellee to exercise his option was October 1, 1920, for it provided that *shareholders* (italics ours), which included appellee by name, should—

"wait for a period of 90 days next after the 1st day of June, 1920, to the end that the com-

pany may have an opportunity to further project their plans, and get in operation certain stores, at the end of which time said purchasers (shareholders) are to express themselves through their attorney or trustee by means of oral communications or in writing through the United States mail unto the company or its successors, whether or not they are satisfied to retain their stocks and participate in the company's further proceedings or desire the return of their money so paid. * * * The purchasers (shareholders) further agree that, in the event the conditions are such that at the end of 90 days they are convinced that said company, its trustees and successors, are in good faith doing the things expected of them, and they exercise the option to retain the stock, then they will in good faith heartily co-operate with said company, its trustees and successors, in the operation of said business, and do all they legitimately can do to make the company a financial and moral success."

If the contract of rescission had been complete at the date of its execution, with nothing left to be done save refund the purchase price of the stock on October 1, 1920, the status of appellee would have been that of a creditor of the bankrupt food company from the date of the contract; but such is not the case, for it is clear that the contract only authorized him to exercise the option to rescind for fraud October 1, 1920. The proof shows that during practically all the time from the date of the optional contract of rescission until the refund of the purchase money appellee permitted his stock contribution to be used by the trustees to carry on the trust business, and that it was being so used at the time the principal portions of the two testifying creditors' debts were contracted by the trustees. We think that, under these circumstances, appellee would certainly be held to have acquiesced in the fraud, and he cannot now assert it as against creditors in good faith of the business which his stock contribution helped to place in a position to contract such debts.

[5] We think it a sound proposition of law that a shareholder in a pure business trust cannot withdraw his contribution to the trust fund; to which fund solely creditors of the trust estate are required to look for their debts, under the provisions of the instrument creating the trust, until all of the indebtedness incurred by the trust estate during the time he was such shareholder is paid; and this is true, notwithstanding he became such shareholder upon the fraudulent representations of the trustees of the trust estate, or their agents, provided the creditors have no notice of such fraud. We think appellee is in the same position as a cestui que trust who conveys real estate in payment of his stock, which real estate the trustee mortgages under the powers given him to an innocent mortgagee; and, should the cestui que trust cancel the conveyance for fraud, he would

certainly take the real estate burdened with the rights of the innocent mortgagee. In like manner should the cash trust funds of a pure business trust be charged with the debts of the trust estate. The question of the personal liability of a shareholder, or what it should be under such business trust as here organized, is not involved; neither do we think appellee's relation to the trust estate as a creditor is involved. Hence the question of whether the payment was made for the purpose of hindering, delaying, etc., creditors, submitted by the court to the jury, is immaterial.

As to the rights between a stock subscriber to a corporation, who was induced to so subscribe by fraud, and subsequent or intervening creditors, it was held, in the case of Burleson v. Davis, supra, that:

"The rights of the stockholders who have been induced to purchase stock by the fraudulent representations of the corporation or its agents are subordinated to the rights of those who, without any knowledge of such fraud, have subsequently become creditors of the corporation."

This opinion further held, concerning the rule as to the stock subscription contract induced by fraud being voidable, as follows:

"'A subscription * * * induced by fraud is voidable, but does not become void until it is repudiated by the subscriber.' * * * This is true as to any other transaction involving the sale or exchange of property. In such case the subscriber to the capital stock of a corporation by his own act has induced the subsequent creditors of such corporation to believe that the capital stock subscribed by him has been or will be paid in, and will remain a trust fund, to which subsequent creditors may look for security."

In the case of Sawyer v. Hoag, 17 Wall. (84 U. S.) 610, 21 L. Ed. 731, the Supreme Court characterized the act of a stock subscriber to a corporation, who immediately withdrew his subscription in the form of a loan, as a fraud upon the public, who were expected to deal with the corporation, and required him to pay it again.

While these cases involve corporations which the law requires to have its capital stock fully paid for the benefit of the public dealing with it, yet the reason for the rule as aptly applies to a pure business trust, which requires the public dealing with it to look solely to the trust fund for debts incurred by the trustees in carrying on the trust business, and such fund should be used for the purpose for which it was intended. And, since the stock contributor placed the trust company in a position to induce creditors to deal with the fund, he cannot complain of the fraud inducing his contribution, where the creditors had no notice of it.

A shareholder's position in a pure business trust, whose subscription was induced by fraud as to innocent creditors of the trust estate, is analogous to that of a married woman, who at common law, could not make a contract; yet her capital contribution to a partnership was subject to partnership purposes, including the payment of debts. Crane & Magruder, Cases on Partnership, p. 94; Miller v. Marx, 65 Tex. 133. Or that of a minor partner, whose contracts in law are voidable, yet he cannot withdraw his capital contribution to the partnership until the firm's debts are paid. Bush v. Linthicum, 59 Md. 344; Gay v. Johnson, 32 N. H. 167; Yates v. Lyon, 61 N. Y. 344.

If a married woman whose contracts are void at common law, or a minor whose contracts are voidable, cannot withdraw their capital contribution to a partnership before its debts are paid, because of the fundamental principle of economics and law that they, as the real owners of the business, and enjoying its benefits, should pay its debts to the extent of their capital contribution, we see no good reason why a shareholder in a pure business trust, for whose benefit the trust is operated, should be permitted to withdraw his trust fund contribution before the debts contracted while he was a shareholder are paid.

For the reasons stated in the opinion, the cause is reversed and rendered; and our judgment is that appellant do have and recover of appellee the sum of $500, with interest at the legal rate from and after October 6, 1920, and costs of suit.

Reversed and rendered.