CHRIST KNUTSON v. NORTHWESTERN LOAN & BUILDING ASSOCIATION.[1]

January 15, 1897.

Nos. 10,376—(282).

| 67 | 201 |
| 73 | 215 |
| 73 | 324 |
| 73 | 326 |

**Building Association—Insolvency—Rights of Members.**

When, by reason of losses, there was such a deficiency in the assets of a building and loan association that it could not mature its stock, the purposes for which it was organized could not be carried out, and the court proceeded to wind it up, *held*, this put an end to the contract between it and its members, at least so far as future performance was concerned.

**Same—Rescission.**

*Held*, further, in adjusting matters between it and its members, the court should proceed on the principle of rescission, as far as the same can be equitably and justly applied, and each member should, to that extent, receive back what he paid, and pay back what he received.

**Same—Losses and Expenses—Set-Off.**

But *held*, it is the duty of each member to bear his share of the losses and expenses of the association, and the expenses of the receiver ap-

[1] Reported in 69 N. W. 889.

pointed by the court. Therefore the borrowing member is not entitled to set off all that he has paid against the loan or advancement which he has received; but a sufficient portion of what he has so paid should be held until final distribution, to cover such losses and expenses, and only the rest of what he has so paid should be set off against such loan or advancement, and the remainder of such loan or advancement should be collected from him.

**Same.**

> *Held,* it does not appear that the court below ordered an unreasonable amount of what each borrowing member so paid in to be so held to cover such losses and expenses.

Appeal by Annie S. Peterson and others from an order of the district court for Hennepin county, Jamison, J. Affirmed.

*E. F. Crawford,* for appellants.

See Waverly M. & P. L. L. & B. Assn. v. Buck, 64 Md. 338, 1 Atl. 561; Windsor v. Bandel, 40 Md. 172; Buist v. Bryan, 44 S. C. 121, 21 S. E. 537; Low St. Bldg. Assn. v. Zucker, 48 Md. 449.

*Frank R. Hubachek,* for respondent.

The appellants cite Maryland and South Carolina decisions to the effect that they should be credited with their stock payments. These decisions treat the borrowing member and the insolvent association as strangers, and the transaction of borrowing as a naked loan. These states hold such loans usurious where interest and premium together exceed the legal rate of interest. Waverly M. & P. L. L. & B. Assn. v. Buck, supra. The Minnesota statute and decisions, on the contrary, hold such a contract not usurious. The weight of authority holds that insolvency affects borrowing as well as other members of the association. Silver v. Barnes, 6 Bing. N. C. 180; Burbridge v. Cotton, 8 Eng. Law & Eq. 57; Seagrave v. Pope, 15 Eng. Law & Eq. 477; Massey v. Citizens' B. & S. Assn., 22 Kan. 624; Hoboken B. Assn. v. Martin, 13 N. J. Eq. 428; Towle v. American B. L. & I. Assn., 61 Fed. 446; American H. Co. v. Linigan, 46 La. Ann. 1118, 15 South. 369; Eversmann v. Schmitt, 53 Oh. St. 174, 41 N. E. 139; Fagan v. People's S. & L. Assn., 55 Minn. 437, 57 N. W. 142.

CANTY, J. The Northwestern Loan & Building Association, a corporation, was organized as a building and loan association. It

became insolvent, in the sense that its assets had depreciated, and it would not be able to mature its stock, and a receiver was appointed to wind it up. One McLaughlin, a borrowing member, made a proposition of settlement. The receiver submitted such proposition to the court, and asked for instructions as to how he should settle with McLaughlin and all other borrowing members. The court, on proper notice, made an order instructing the receiver to accept McLaughlin's proposition, and settle with all the other borrowing members in the same manner. From this order a number of such other borrowing members appeal.

According to the plan of the association, the par value of the stock, when matured, would be $100 per share. McLaughlin took 10 shares of stock, and on April 14, 1892, procured a loan or advancement of $1,000 on the same. He agreed, pursuant to the by-laws, to pay each month 50 cents premium and 50 cents interest on each $100 of the loan, and also to pay 65 cents per month dues on each $100 of his said stock, "until the dues so credited on the stock, together with the dividends declared thereon, shall equal the amount loaned." The performance of this agreement was secured by a bond and real-estate mortgage given by McLaughlin. He made these payments from that time until the commencement of the proceedings to wind up the corporation, when he had paid:

| | |
|---|---:|
| On stock | $233 24 |
| As interest | 235 00 |
| As premiums | 235 00 |
| Total | $703 24 |

Pursuant to his said proposition, the court ordered that he be charged with the $1,000, and interest thereon at the rate of 7 per cent. per annum from the date on which he borrowed the same, and that he be credited with the sums so paid as interest and premiums,

"Together with interest at 7 per cent. per annum on said payments of interest and premiums from their respective dates in the manner of partial payments, * * * leaving the stock payments made by him, the said McLaughlin, of $233.24 * * * in the hands of said receiver, to await the winding up of the said corporation, and to be paid back to him, the said McLaughlin, in the regular course of distribution by the receiver."

The by-laws, among other things, provide:

"Sec. 34. Each investing member shall pay into the treasury of the association not less than sixty-five cents per month on each one hundred dollars of running stock owned by him, * * * until such monthly payments, together with such other sums as he may choose to pay, and such dividends as may be declared thereon, shall together amount to the face value of said stock, at which time the member shall be entitled to receive the par value thereof in cash."

"Sec. 36. All loans shall bear interest at the rate of six per cent. per year during the continuance of the loan, payable at the rate of fifty cents per month on each $100 of loan made.

"Sec. 37. All loans shall bear premium at a rate fixed annually by the board of directors.

"Sec. 38. Each borrowing member shall pay to the association not less than one dollar and sixty-five cents per month on each one hundred dollars of loan made to him, which sum shall be applied as follows: First. To the payment of any fines or other assessments made against him in pursuance of the by-laws. Second. To the payment of the premium due on such loan. Third. To the payment of the interest due on such loan. Fourth. The balance of such payment shall be credited as dues on the stock on which such loan is taken. Such payments shall be continued until the dues so credited on the stock, together with the dividends declared thereon, shall equal the amount loaned. The loan and the stock on which it was taken shall then both be canceled, and the borrower's mortgage released."

"Sec. 43. The board of directors, on the first day of January and July of each year, shall declare such dividends as may accrue from the earnings of the association, after deducting therefrom all expenses and losses, and also such sum as they may reserve for the fund used for the payment of contingent losses."

Section 48 provides that investing members may withdraw at any time, and shall receive back certain specified portions of the amounts paid in, not exceeding the net profits of the association. It further provides:

"A borrower may pay off his loan on application, at any time, by paying the balance due after deducting the value of the shares assigned to the association as collateral; or the shares may be redeemed and retained by paying the amount of the loan in full."

It also appears from the report of the receiver that less than one-third in cost of the assets of the association is invested in present mortgage loans (made to its members); that the rest of such assets consist mainly of real estate which cost the association very much

more than its present value; and that all that can be realized from all of the assets will repay the present members much less than they have contributed to the association.

The so-called "insolvency" of the association, and the proceedings to wind it up, put an end to the contract between it and its members, at least so far as future performance is concerned. Strohen v. Franklin S. F. Assn., 115 Pa. St. 273, 8 Atl. 843; Brownlie v. Russell, L. R. 8 App. Cas. 235; Towle v. American B. L. & I. Assn., 61 Fed. 446.

Again, the original scheme has totally failed, and can be carried out in scarcely any particular. The members can no longer withdraw in the manner provided by the by-laws. Brownlie v. Russell, supra. The stock can never be matured, and the members have no right to be repaid in the order in which the stock of each would have matured if the scheme was successful, and had been carried through. Then, in winding up such a corporation, we can see no principle on which to proceed in adjusting matters between it and its members, except the principle of rescission, so far as the same can be equitably and justly applied. Each member should, to this extent, receive back what he paid and pay back what he received.

It may be urged that the theory of rescission here adopted will, in many cases, offer a great inducement to the borrowing member to attempt to have the association wound up by the court. For instance, where the borrowing member has paid, or agreed to pay, a large amount of premium for the loan or advancement to him, he will receive back the premiums paid and escape payment of the unpaid premiums if he can wind up the association and settle with it on the theory of a rescission of his contract. But it must be remembered that, before the association can be thus wound up, there must be such a deficiency of assets that it appears that the scheme has failed, and the purposes for which the association was organized cannot be carried out. Where there are no outside creditors, such deficiency of assets does not constitute insolvency, in any proper sense of the word, but is merely a loss of corporate capital, and a consequent depreciation in value of the stock held by the members. Then the remedies for winding up a corporation on the ground of insolvency do not apply.

However, a *court* of equity has jurisdiction to wind up a corporation when the purposes for which it was organized have wholly failed. 1 Morawetz, Priv. Corp. (2d Ed.) §§ 285, 286; Towle v. American B. L. & I. Assn., supra. When there is such a deficiency of assets that the scheme has failed and the stock cannot be matured, it can hardly be said that there is any adequate or substantial consideration for the premiums so agreed to be paid for the loan; for the expected consideration has largely or almost wholly failed. The benefits to be derived from membership have failed. The benefits expected to be derived by the borrowing members from the premiums to be paid by themselves, and divided between themselves and the nonborrowing members, have also largely failed. Then we are of the opinion that, in adjusting matters between this corporation and its members, the principle of rescission should be applied as far as it is just and equitable. There may, however, be items to which this principle could not be applied; such, for instance, as fines and penalties imposed to compel observance of the by-laws and a prompt and orderly transaction of business. As to this we express no opinion.

But, while each member should receive back what he paid and pay back what he received, it is the duty of each member, whether borrower or nonborrower, to bear his share of the losses and expenses of the corporation, and also the expenses of winding it up. These members are not strangers to the corporation, and have not dealt with it as such, but each is a member of the corporate entity. Then, as far as such losses and expenses are concerned, there can be no rescission.

It follows, therefore, that the borrowing member is not entitled to set off all that he has paid against the advancement or loan which he has received. If the borrowing members are permitted to do this, it will throw the whole burden of such losses and expenses upon the nonborrowing members. Then the borrowing member should only be allowed to set off a part of what he has paid against the loan or advancement which he has received, and the balance of such loan or advancement should be collected from him, thereby leaving the other part of what he has so paid to be held until final distribution, and applied, as far as necessary, on such losses and expenses. The part which should be thus held to cover such losses

and expenses should be such an amount as the court is fully satisfied will cover the same.

From the state of affairs reported by the receiver in this case, it appears highly probable that there will be a considerable shortage of assets when all of the same are converted into cash, and we cannot say that the court below erred by ordering too large a part of the amounts paid in by McLaughlin and the other borrowing members to be so held to meet their share of the shortage; that is, their shares of such losses and expenses. McLaughlin had another lot of stock on which he had received another loan or advancement, and the court below made a like order as to it.

This disposes of all the questions raised, and the order appealed from is affirmed.