THE WESTERN REALTY AND INVESTMENT COMPANY *vs.*
LOUIS F. HAASE.

Third Judicial District, Bridgeport, October Term, 1902.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, JS.

One *X* sold his stock in a Minnesota building and savings association,
of which he was agent, to the defendant, already a member of the
association, representing that upon his pledge of the stock the as-
sociation would make him an advancement or loan, which he would
never have to repay except by the forfeiture of the stock. In an
action by the association's assignee to recover on the note given by
the defendant to the association for an advancement on the shares
so purchased by him of *X*, it was *held* : —
1. That inasmuch as *X*, in selling his stock, was acting not as agent of
the association but in his own interest, his representations to the
defendant were immaterial.
2. That the real nature of the transaction between the defendant and
the association was one which bound him to repay, in some form,
the money borrowed from it.
3. That if by reason of the peculiar nature of such an association, and
of its by-laws, there were restrictions on its right to enforce pay-
ment of the note before the maturity of the stock, they were de-
pendent upon the existence of the association as a going concern,
and became impracticable upon its insolvency and the winding up
of its affairs.
In his dealings with the association the defendant relied to some extent
on the continued existence of a certain by-law of the association
which in fact had been repealed two or three years before. *Held*
that under the laws of Minnesota he was not entitled to notice of
the repeal.

Argued November 7th, 1902–decided January 7th, 1903.

ACTION to recover the amount of a promissory note, brought
to the District Court of Waterbury and tried to the court,
*Cowell, J.;* facts found and judgment rendered for the de-
fendant, and appeal by the plaintiff for alleged errors in the
rulings of the court.  *Error and judgment reversed.*

The note sued upon is as follows :—

" 335.00 /100.          MINNEAPOLIS, MINN., Dec. 20, '95.

" On or before March 20, 1896, after date, without grace,
for value received, I promise to pay to The American Sav-

ings & Loan Association at its home office in Minneapolis, Minnesota, three hundred thirty-five & no /100 dollars.

"This note is given for the repayment of an advancement made to me by said association on my eight shares of stock therein, represented by certificate No. 42,853, and for which I have made an application and bid in accordance with the by-laws of said association. As collateral security for the payment of this note when due I hereby sell, assign, transfer, and set over unto said association the shares of stock above mentioned, and authorize the secretary to transfer the same upon the books.

"It is further expressly agreed that in default of payment of this note when due the said shares may be sold at public auction or private sale as the association may elect, without demand or notice ; and that the said association may become the purchaser at such sale, hereby ratifying and confirming any act done by said association in that behalf.

"Premium $5.02.

"Interest $5.03.

"LOUIS F. HAASE,

"158 Grand St.,

"Waterbury, Conn."

The complaint, among other things, alleges that the American Savings and Loan Association, payee of the above note, was a mutual savings and building association, a corporation located at Minneapolis, Minnesota, and organized in pursuance of the statutes of that State relating to building, loan and savings associations; that on June 18th, 1896, in an action pending before the appropriate court in the State of Minnesota, said company was duly adjudged insolvent, and one William D. Hale was duly appointed permanent receiver thereof, and duly qualified as such receiver, and has ever since been the duly appointed receiver of said insolvent company; that said note remains unpaid except a payment of $145.27 on September 15th, 1897, with accrued interest to that date; that on the 12th day of May, 1899, said court, by an order duly made and entered, authorized and directed

said receiver to sell said note, and on May 26th, 1899, said receiver, in pursuance of said order, sold and assigned said note for a valuable consideration to the plaintiff, which is now the *bona fide* owner and holder thereof.

The answer admits the execution of the note and the part payment thereof as averred, and denies the other allegations of the complaint. It also sets out a special defense, the averments of which are denied by the plaintiff.

The court, *Cowell, J.*, rendered judgment for the defendant upon the facts specially set forth in the finding.

*Frederick M. Peasley* and *John H. Cassidy*, for the appellant (plaintiff).

*M. Eugene Culver* and *Nathaniel R. Bronson*, for the appellee (defendant).

HAMERSLEY, J. The judgment appealed from states that the trial court finds all the issues for the defendant, and thereupon adjudges that the defendant recover his costs.

The record states specifically all the material facts upon which this judgment is founded. The finding states that the plaintiff claimed, that upon these facts as a matter of law the issues must be found and judgment rendered for the plaintiff. The refusal of the court to sustain this claim is the controlling error in the case.

The issues presented by the pleadings and tried by the court comprise those raised by the defendant's denials of the facts stated in the complaint, and those raised by the plaintiff's denials of the facts stated in the defendant's special defense. The court has found each fact alleged in the complaint and denied by the defendant, to be true. It is plain, and not controverted, that upon proof of these facts the plaintiff is entitled to judgment, unless the facts alleged in the special defense are true.

The substance of the special defense is as follows: One Allen, an agent of the American Savings and Loan Association, represented that defendant should apply for and obtain

from said company an advancement on his stock, giving the company in acknowledgment of the transaction the necessary and proper papers; that if the defendant should not be desirous of redeeming his stock he would not be compelled so to do, but would have the option of allowing said stock to became the property of the company, as it were by default; that after such surrender of the stock the defendant would be under no liability or obligation to the company.

Said agent, in confirmation of the truth of his representations, exhibited to defendant certain printed statements of the company, and Article XII, § 14, of the by-laws thereof, which by-law was as follows: "The term 'loan' as used in these by-laws . . . and blanks of the association, is employed for convenience merely, and shall not in any case be construed to define the real nature of the transaction between the association and the member who obtains an advancement on the maturity value of his stock as provided in this article, but such transaction shall be construed as a discount of or an advancement on the shares owned by the member in anticipation of their maturity, there being no promise or agreement on the part of such member to repay the principal,"—and represented that said by-law was in force. Said agent endeavored to induce the defendant to follow said advice, and to apply for and obtain said advancement instead of following a different course with the company which defendant had intended to follow. Defendant relied upon the representations of said agent, and upon the said printed statements and by-laws of said company, and was induced thereby to execute the contract set forth in the complaint.

This defense may be reduced to two averments: First, the defendant was persuaded by an agent of the company to execute the contract sued upon, and induced to do so by the representations of said agent that the company would not compel him to repay the money loaned him otherwise than by forfeiture of his stock. Second, the defendant executed the contract in the belief, induced by the printed statements and by-laws of the company, that the contract did not obligate him to repay the loan except by forfeiture of his stock.

As to the first averment, the court finds that the defendant purchased the stock upon which he obtained the loan or advancement of said Allen, who had purchased it of one Starr, to whom the stock was originally issued; and that the representations were made by Allen in the course of this transaction, in which he was not acting as agent of the company, but in his own interest and the interest of the defendant. This the defendant knew, and relied on the statements of Allen because he thought that one who was and had been an agent ought to have accurate information.

In finding thus, the court necessarily disposes of this part of the defense in favor of the plaintiff. As the defendant knew that Allen's representations were not made as agent of the company, nor on its behalf, it is immaterial what those representations were, or what influence they exerted upon the defendant.

As to the second averment, the court finds the printed statement and by-laws of the company upon which the defendant relied, and they are before us as à part of the record in a document called "Exhibit A." This fact is immaterial, unless the legal effect and meaning of the document is that given to it by the statements of Allen to the defendant. Upon reading this document in connection with the statutes under which the company was organized (General Statutes, Minn., §§ 2855–2894), and with the other facts found, we deem it clear, too clear to justify discussion, that the real nature of the transaction between the defendant and the company was one which bound the defendant to repay the sum loaned or advanced to him, and for which he gave his note. That repayment might be direct, or by an application of the proceeds of the sale of the stock pledged as collateral, if sufficient for the purpose, or by an adjustment with the company upon the maturity of the stock; but in some form the money thus loaned must be repaid.

The finding shows that the trial court, in holding that there was no obligation for repayment, was influenced by the last clause of the by-law quoted in the special defense, viz, "there being no promise or agreement on the part of such member to repay the principal." There is no occasion to discuss the

effect of these words, for the court also finds that the clause was repealed by an amendment to the by-laws passed two or three years before the transaction in question.

The error of the court in holding that the defendant, who became a member of the company while the by-law, as first enacted, was in force, was entitled in subsequent transactions with the company to rely upon this clause unless he had received notice of its repeal, is obvious; the enactment of by-laws is regulated by the Minnesota statute, and such notice is not required.

It may be true that by force of the organization and by-laws of this company the right to demand direct payment of the note in suit, before the maturity of the stock, is limited by certain obligations between the member and the company, arising from the peculiar nature of such mutual associations.   But if so, such obligations are dependent on the company being a going concern.   Their enforcement becomes impracticable when it ceases to transact business.   When this company was adjudged insolvent and a permanent receiver appointed to wind up its affairs, any such limitation as to the time of repayment became inoperative.   *Curtis* v. *Granite State Provident Asso.*, 69 Conn. 6, 10; *Knutson* v. *Northwestern L. & B. Asso.*, 67 Minn. 201.   The receiver became entitled to enforce immediate repayment, and this right he was authorized by an order of court to sell and transfer to the plaintiff.

No question as to any equitable adjustment of the amount due as between the defendant and the receiver, or his assignee, arises in this case.   It is not alleged, proved, nor claimed, that any less amount is due than the amount of money loaned less the credit for the proceeds for the collateral sold.

It follows that the judgment is erroneous because, upon the facts found by the court, the only legal judgment is one for the plaintiff.

There is error, the judgment of the District Court is reversed, and the cause remanded that judgment may be rendered for the plaintiff for the balance due upon the note, with interest.

In this opinion the other judges concurred.