FANNIE OTTENSOSER AND L. OTTENSOSER, *Appellants*, v. G. S. SCOTT AS RECEIVER OF THE OCALA BUILDING AND LOAN ASSOCIATION, *Appellee*.

1. On foreclosure by the receiver of an insolvent building and loan association against a borrowing member who has paid his dues and assessments promptly until the association was dissolved by the appointment of a receiver, through no fault of such member, the receiver is not entitled to charge such member with the so-called "earned premium" where such premium is in the form of a deduction from the sum loaned. (CARTER, P. J., dissenting.)

2. On a settlement with an insolvent building and loan association borrowing members are not entitled to be credited with the full face or book value of their stock, but only for such *pro rata* amount thereof as the actual conditions may warrant, based upon the net assets in the hands of the receiver.

3. On foreclosure by the receiver of an insolvent building and loan association, attorney's fees are properly allowed, the mortgage providing that the borrowing member "promises and agrees to a pay a reasonable sum of money for solicitor's fees that may be incurred by the association in the event that foreclosure of this mortgage becomes necessary."

4. Borrowing members of an insolvent building and loan association are not enstopped from contesting a scheme of settlement agreed upon by a majority of the stockholders and adopted by the court on bill filed by certain other members, borrowers and non-borrowers, "on behalf of themselves and all others who may be similarly situated and having like interests who may join them as complainants" against the association, a corporation, as sole defendant, none of the complainants being in exactly the same class as such borrowing members. Nor do the facts that such borrowing members filed their "protests" against the proposed scheme and were represented by counsel who made argument in support of the protest, constitute *"res judicata,"* it not appearing that they "intervened" or were in position to control the cause or to appeal therefrom, nor that any action was had by the court upon the "protest." (CARTER, P. J., dissenting.)

This case was decided by Division A.

Appeal from the Circuit Court for Marion county.

The facts in the case are stated in the opinion of the court.

*Richard McConathy* and *W. K. Zewadski* for appellants.

*R. A. Burford* for appellee.

COCKRELL, J.—The principal contention in this case is the right of an insolvent building and loan association to charge a borrowing stockholder with a proportionate part of the discount bid for the priority of loan, the so-called "earned premium." In this case the Ottensosers had bid for this priority of loan a discount of 29 4-5 per cent., and had paid promptly when due, each month for eighty-five months, and until the association was dissolved by the appointment of a receiver, the monthly installments of interest on the amount borrowed and of assessments on the stock bought; and upon a bill filed by the receiver of the association to enforce the mortgage lien given as security for the transaction, they were charged with the amount actually received, with eight per cent. interest, the legal rate of interest in this State, from the time the said amount was received, and were further charged with eighty-five per cent. of the discount so bid, on the theory that the scheme upon which the bid was made having partially failed, the bidder was equitably entitled to a reduction only of the bid, in proportion to the degree of the failure, and as the scheme was estimated to work out in one hundred months, the bidder had the advantage of the scheme for eighty-five of these months, and should, therefore, be charged in that ratio. Such method of charging borrowing stockholders of insolvent building and loan associations is not without respectable authority, nor is it unsupported by weighty reasons. It was announced by Judge GROSSCUP in *Towle v. American Bldg. Loan & Inv. Soc.*, 61 Fed. Rep. 446, and has been frequently applied in the federal courts. We are of the opinion, however, that the weight of authority, as

well as the sounder reason, is to the contrary. The premium bid, in the instant case, is in the form of a deduction from the sum to be loaned, and is founded upon the sole consideration that the scheme will work out without interruption; and if the existence of the association is prematurely interrupted through no fault of the borrowing member, the consideration for the bid entirely fails and there is no equity for its apportionment. According to the agreed facts before us, the failure of the association was caused by circumstances over which neither the association nor its members had control, *viz*: the depreciation of its assets by the freeze of 1895, and the collapse of two Ocala banks. The decree is to be modified, therefore, by striking off from the accounting the charges against the defendants for "earned premiums." The cases sustaining this view are numerous and we shall cite only a few. *Hale v. Phillips,* 68 Ark. 382, — S. W. Rep. —; *Curtis v. Granite State Provident Ass'n,* 69 Conn. 6, 36 Atl. Rep. 1023; *Marion Trust Co. v. Trustees of Edwards Lodge,* 153 Ind. 96, 34 N. E. Rep. 444; *Spinney v. Miller,* 114 Iowa 210, — N. W. Rep. —; *Knutson v. Northwestern Loan & Building Ass'n,* 67 Minn. 201, 69 N. W. Rep. 889; *Ansolme v. American Savings & Loan Association,* 63 Neb. 525, — N. W. Rep. —; *Weir v. Granite State Provident Ass'n,* 56 N. J. Eq. 234, 38 Atl. Rep. 643; *Strohen v. Franklin Sav. Fund & Loan Ass'n,* 115 Pa. St. 273, 8 Atl. Rep. 843; *Rogers v. Hargo,* 92 Tenn. 35, 20 S. W. Rep. 430; *Young v. Improvement Loan and Building Association,* 48 West Va. 512, — S. E. Rep. —. See, also, Endlich Build. Ass'n (2nd ed.) sec. 531.

The defendants are not entitled to credit upon their indebtedness the full face or book value of the stock held by them in the several series issued, but only for such *pro rata* amount as the actual conditions may warrant based upon the net assets in the hands of the receiver. As stockholders in the association they are not to be preferred as such over their fellow stockholders by reason of the fact

that they are also borrowers from the association.    See authorities cited above.    No question of usury is here involved.

It is further contended that there was error in allowing counsel fees, and in support thereof *Park v. Kribs, Receiver,* 24 Tex. Civ. App. 650, — S. W. Rep. —, and *Union Trust Co. v. Shilling,* 30 Ind. App. 543, 66 N. E. Rep. 699, are cited.    We think those cases may be distinguished from the present case.    In both of them the courts refused to allow attorneys' fees, conditioned upon the failure of the borrowers to fulfil the conditions of their "bonds," on the theory that it was the act of the law precipitating the maturity of the debt on the insolvency of the association that caused the suit, and not the failure of the debtor to comply with his bond.    In the instant case the mortgage, not the bond, provides for the fee, and in it we find the following: "And the said Fannie and L. Ottensoser promise and agree to pay a reasonable sum of money for solicitor's fees that may be incurred by the Ocala Building and Loan Association, in the event that foreclosure of this mortgage become necessary."    The foreclosure became necessary by reason of the failure of the defendants to pay the sum due upon the equitable accounting indicated above, and a reasonable fee should be awarded, the amount thereof to be hereafter determined.

The appellee insists that the Ottensosers should not be heard to contest the scheme of settlement decreed in the Clyatt case and under which the receiver therein appointed is proceeding in this case to enforce the mortgage lien.    The Clyatt suit appears to have been a friendly one, brought by Clyatt, Clarkson and Delouest "on behalf of themselves and all others who may be similarly situated and having like interests, who may join them as complainants in said cause," against the corporation as sole defendant, for the appointment of a receiver and the carrying out of a scheme of settlement agreed upon theretofore by a majority of the stockholders; the court's action being rendered necessary by

reason of the fact that unanimous written consent of the stockholders,—the Ottensosers being of those who refused to concur,—could not be had for the purpose of a voluntary settlement *in pais*. None of the parties complainant can be said to be in the class with the Ottensosers; Clyatt held free and unencumbered shares in series C of the capital stock, Clarkson shares in series D that had been borrowed on, Delouest held shares in series B that were fully matured, while the Ottensosers' shares that were borrowed on and are now being subjected, are in series C. The only borrower represented, therefore, is Clarkson, who belongs to a later class than the Ottensosers, and who, therefore, would not, under the scheme, be subjected to so large a percentage of the premium bid. These complainants were all pecuniarily interested therefore in making the Ottensosers pay the premium as it redounded to their benefit. The relation between the association and the Ottensosers as borrowing members was also hostile. Whatever right the majority of a corporation may have to bind the minority to acts inimical to the latter, as stockholders that right will not be extended so as to allow the creditor to alter or change by his own *ipse dixit* the contractual or other obligation of the debtor.

Had we before us an intervention properly filed in the Clyatt case that raised questions of law or fact and passed upon by the court, a different question might be presented. The pleadings set up, as constituting the estoppel or *res judicata,* the matters hereinbefore pointed out, but in the agreed statement of facts we find that the Ottensosers filed "their 'protest' in the suit of W. W. Clyatt and others, against the Ocala Building and Loan Association prior to the judge's rendering the decree therein, the protest being directly and principally to the manner or plan of settlement as provided in said decree, the said defendants protesting against any part of the premium being charged to the borrower and were represented by counsel who made argument before the court in support of his protest against any part of

the premiums being charged to the borrower in the general plan of settlement decreed by the court. That at the time of the appointment of a receiver the defendants owed the largest amount to the association of any individual member," etc. We do not see that this act on the part of the defendants constituted them parties to the cause in such sort as to bind them. They did not control the case nor were they in position to appeal from the decree rendered, nor does it appear that any action by the court was had upon this "protest." The court, on the consideration of the directions to be given its receiver in the settlement of an insolvent concern, might seek light from any proper source and listen to suggestions from members of the bar who had studied the subject, but until it is called upon to pass its judgment upon some issue raised by proper pleadings before it, can it be said there is an adjudication? Nothing done in the Clyatt case gave those who "protested" the *right* to control the proceedings, to make defense, to adduce and cross-examine witnesses, nor to appeal from the decision, within the rule as to "parties in the larger sense," laid down in the leading case of *Cecil v. Cecil,* 19 Md. 72, S. C. 81 Am. Dec. 626. See, also, *Central Baptist Church & Society v. Manchester,* 17 R. I. 492, 23 Atl. Rep. 30, S. C. 33 Am. St. Rep. 893. We think the case before us clearly distinguishable in its facts from the facts as found by this court in the case of *Elizabethport Cordage Co. v. Whitlock,* 37 Fla. 190, 20 South. Rep. 255, and that what we have said here is not in conflict with the decision therein rendered.

The decree is reversed, with directions to restate the account upon the principles above announced, and for such further proceedings as may accord with equity practice and with this opinion.

TAYLOR, C. J., and HOCKER, J:, concurring.

SHACKLEFORD and WHITFIELD, JJ., concur in the opinion.

CARTER, P. J., dissenting.

HOCKER, J. (concurring).—It is contended that appellants Fannie Ottensoser and L. Ottensoser are estopped from questioning the propriety of the decree of the Circuit Court made in the case of *W. W. Clyatt and other stockholders v. The Ocala Building and Loan Association* adjudging the association insolvent, appointing the receiver and fixing the terms of settlement with borrowing stockholders, because they filed before the court a protest against the plan of settlement which the bill prayed for and which the court adopted, and were represented by counsel in opposition to the plan. The following seem to be the facts:

1st.   The appellants were not parties to that suit.

2nd.   The defense, if any was made, is not distinctly set forth, but it is inferable that the plan asked to be adopted had already been agreed to by a majority of the stockholders, and that the association did not by answer or otherwise oppose its adoption by the court.

3rd.   It does not appear that any stockholder was a party defendant in that cause, and therefore, there was no defendant before the court with an answer or other pleading setting up the defense that the plan agreed upon was inequitable or unjust to these appellants or any other stockholder.   In other words, it does not appear that the pleadings raised any issue upon the propriety or equity of the agreed plan, and, therefore,

4th.   It does not appear that the pleadings were in a condition which permitted the defense that the plan was inequitable to these appellants by them or any one else.

5th.   It does not appear that appellants offered testimony, or that there was any issue made upon which they could have offered testimony, or that they in any manner controlled the defense, but on the contrary it rather appears that they did not control the defense.

6th.   It does not appear that they occupied any such relation to that cause as would have enabled them to appeal

from the decree rendered, or on appeal have been able to present any issue to this court for decision; as the only defendant, the association occupied to these appellants a hostile position.

The foregoing facts are plainly inferable from the record.

In Greenleaf on Evidence, sec. 523 (16th ed.), it is said: "It is also a most obvious principle of justice, that no man ought to be bound by proceedings to which he was a stranger; but the converse of this rule is equally true, that by proceedings to which he was not a stranger he may well be held bound. Under the term *parties,* in this connection, the law includes all who are directly interested in the subject-matter, and had a right to make a defense, or to control the proceedings, and to appeal from the judgment. · This right involves also the right to adduce testimony, and to cross-examine the witnesses adduced on the other side. Persons not having these rights are regarded as strangers to the cause. But to give full effect to the principle by which parties are held bound by a judgment, all persons who are represented by the parties, and claim under them, or in privity with them, are equally concluded by the same proceedings. We have already seen that the term *privity* denotes mutual or successive relationship to the same rights of property." The several classes of privities are given in section 189 Id. as follows: "Thus, there are privies in estate, as donor and donee, lessor and lessee, and joint-tenants; privies in blood, as heir and ancestor, and coparceners; privies in representation, as executors and testator, administrators and intestate; privies in law, where the law, without privity of blood or estate, casts the land upon another, as by escheat. All these are more generally classed into privies in estate, privies in blood, and privies in law." And in note 1 is given privity in tenure between landlord and tenant; privity in contract alone, or in the relation between lessor and lessee, or heir and tenant in dower, or by the curtesy, by the covenants of

the latter, after he has assigned his term to a stranger; privity in estate alone, between the lessee and the grantee of the reversion; and privity in both estate and contract, as between lessor and lessee.

In the case of *Elizabethport Cordage Co. v. Whitlock et al.,* 37 Fla. 190, Whitlock was held estopped by two judgments in ejectment, in which suits he had filed pleas asserting title in himself as owner, and alleging the other defendants to be his tenants. Whitlock therefore not only filed pleas and defended the suits, but was privy in tenure with the other defendants in the suit. Under the law as above given he was therefore properly held to be estopped by the judgments against his lessee or tenant. But that case is clearly unlike the one at bar.

In *Cecil v. Cecil,* 19 Md. 72 (81 Am. Dec. 626, annotated) the court quotes the law from Greenleaf as we have stated it, and says: "Parties in the larger sense are all persons having right to control proceedings, to make defense, to adduce and cross-examine witnesses and to appeal from the decision if an appeal lies. Only those therefore who have enjoyed all these privileges *collectively* should be concluded by decision, judgment or decree."

In the case of *Central Baptist C. & S. v. Manchester,* 17 R. I. 492, S. C. 33 Am. St. Rep. 893, the question was "Is a person not a party to the record whose counsel is present and participates in the trial of a suit against his servant, agent or employee, bound by the judgment rendered in the suit." The court held he was not bound. 2 Black on Judgments (2nd ed.) sec. 534. We do not think it essential to cite the many other authorities which are at hand. Applying the law as thus stated, to the foregoing facts, we are unable to hold that the Ottensosers were so connected with the case of *Clyatt v. The Ocala B. & L. Association* (the purpose of which suit was to procure a decree fixing the terms of settlement with borrowing members of an insolvent building and loan association, in which suit there was no party defendant representing the interests

of such borrowers, and no answer, plea or demurrer raising in their behalf any issue, either of law or fact) as parties, or under any relation of privity, so as to be bound by the decree made in that case. Nor are the defendants estopped by the conduct at the meeting of the stockholders, called August 7, 1901, for the purpose of procuring the assent of all the stockholders to the plan of settlement which was then adopted; for while they were represented at said meeting by proxy, they did not consent or agree to the said plan. The notice calling the meeting shows that it was not to be regarded as adopted unless all, or practically all, the stockholders consented thereto, and it also shows that, unless all, or practically all, the stockholders consented thereto, a resort would be had to the courts for the appointment of a receiver, and the record shows that this latter course was followed in the case of *Clyatt et al. v. The Ocala B. & L. Association.* We can not discover from these facts that the appellants did anything upon which an estoppel could be predicated.

CARTER, P. J., dissenting.—It is not claimed in this case that the amount of the premium charged appellants by the decree is estimated upon an improper basis, but only that no part of the premium should have been charged.

In *Towle v. American Building Loan & Inv. Society,* 61 Fed. Rep. 446, it was held that the receiver of an insolvent building and loan association in adjusting settlement of mortgages given by members who had procured loans upon their stock, should charge them with the earned portion of the premium paid or agreed to be paid for the preference of loan. For reasons stated by Judge GROSSCUP in that case, and by Judge GREEN in *Choisser v. Young, Receiver,* 69 Ill. App. 252, and others which occur to me, I think upon principle the appellants in this case should not be relieved from payment of the earned portion of the premium bid by them for the preference of loan estimated upon an equitable basis. There are numerous decisions, however,

which repudiate this rule and relieve the borrowing member from paying any part of the premium, though it seems if the assets are not sufficient to enable the receiver to deal with each stockholder and mortgagor on that basis without resulting in an unequal division of the assets among the stockholders, the other rule will be followed. *Whitehead v. Commercial Building and Loan Association,* 64 N. J. Eq. 24, — Atl. Rep. —. Numerically speaking the cases sustaining the rule that no part of the premium is to be charged, as against those sustaining the other rule, are as many to few—the multitude to several. I have examined all the cases which I have been able to find in the library sustaining the majority rule, but none of them advance sufficient reasons to convince me of its correctness. I realize the responsibility resting upon a judge who refuses to follow what is termed the great weight of authority, but with my present convictions, formed after as mature consideration of the question as I am capable of giving it, I shall accept that responsibility in the present case. But, aside from this, other considerations lead me to the conclusion that in the present case the rule adopted by the Circuit Court should not be disturbed. The receiver was appointed October 15th, 1901, in a suit instituted against the building and loan association by Wm. W. Clyatt, Jr., the owner of five shares of series C of the capital stock of the association, Harry B. Clarkson, the owner of twelve shares of series D upon which loans had been made, and Amedee E. Delouest, the owner of two shares of series B, on behalf of themselves and all others similarly situated and having like interests, who might join them as complainants under the rules of law and equity applicable to such cases. The decree appointing the receiver directed him in making settlement with borrowing stockholders to charge the earned premium, and it is admitted that the decree in this case charges earned premium in accordance with those directions. While appellants were not formally made parties to said suit, the agreed statement of facts shows that they "filed their protest

in the suit of W. W. Clyatt, Jr., and others against the Ocala Building and Loan Association, prior to the Judge's rendering the decree therein, the protest being directly and principally to the manner or plan of settlement as provided in said decree—the said defendants protesting against any part of the premiums being charged to the borrowers, and were represented by counsel, who made argument before the court in support of his protest against any part of the premiums being charged to the borrower in the general plan of settlement decreed by the court."

In Black on Judgments, sec. 541, it is said: "Numerous cases show that a judgment may be binding as an estoppel upon a person who, although not nominally or formally a party to the action in which it was rendered, submitted his interest in the subject-matter of the litigation to the consideration of the court and invited its adjudication thereon."

In *Elizabethport Cordage Co. v. Whitlock,* 37 Fla. 190, text 223, 20 South. Rep. 255, it is said: "It has been frequently held that if a party is interested in the subject-matter of a suit and does in fact appear and exercise the right of participation in the defense as if he were a technical party upon record, he can not afterwards be heard to contend that he is not bound and concluded by the judgment or decree to the same extent that he would have been if made a technical party to the proceeding." This statement of the law, it will be noted, is taken almost literally from the decision in *Parr v. State for the use of Cockey,* 71 Md. 220, 17 Atl. Rep. 1020. I am unable to see why the decree appointing the receiver and instructing him as to settlements is not binding upon the appellants under these rules of law, as they were unquestionably interested both as stockholders and borrowers in the plan of settlement de-· creed, and in winding up the affairs of the association. The plan adopted by the court was one recommended by a majority of the stockholders before any suit was instituted, but which failed for want of the unanimous consent of all stockholders. The appellants were heard in opposition to

this plan before it was decreed by the court, upon a protest filed by them, and they should be bound by that decision. I think the filing of the protest by parties interested and entitled to intervene, as these parties unquestionably were, the recognition by the court of their right to file such protest and to be heard thereon, and the presentation of such protest by the parties and the hearing thereon constituted them real parties by intervention, though no formal order was asked or made admitting them as parties to the record. .

The court, after hearing argument upon such protest, overruled it by instructing the receiver to collect the earned premium, and I see no reason why an appeal could not have been taken from the decree, if the parties so desired. They undoubtedly had a right to present any pertinent evidence in support of their protest, and to control the proceeding so far as the protest was concerned, and I think they had the right to appeal from the decree if that be considered an essential element, in determining the question. The Circuit Court evidently regarded the Ottensosers as parties—not merely as members of the bar making suggestions—and they were given a hearing as such. They submitted their interest to the consideration of the court by a written paper filed in the suit, and invited the adjudication had thereon, which was rendered only after a hearing such as is usually given to parties entitled to be heard. The receiver has proceeded to administer the trust under the decree appointing him, and three dividends were declared before the final decree was rendered in this case. If other borrowing stockholders are required to settle in accordance with the instructions given the receiver, and I assume they are as dividends are being declared, it certainly would be inequitable to relieve the appellants from earned premium and at the same time permit them to share in the earned premiums paid by other borrowing stockholders. I think there is no error in the decree in respect to those matters complained of, and that, therefore, it should be affirmed.